**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JASON SALAZAR, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>THOMPSON COBURN, LLP, and PRESBYTERIAN HEALTHCARE SERVICES,<br><br>          Defendants. | Civil Action No. 4:24-cv-1509 |
| KRISTIN TAFOYA, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>THOMPSON COBURN, LLP, and PRESBYTERIAN HEALTHCARE SERVICES,<br><br>          Defendants. | Civil Action No. 4:24-cv-1513 |
| DENISE SANDOVAL DURAN, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>THOMPSON COBURN, LLP, and PRESBYTERIAN HEALTHCARE SERVICES,<br><br>          Defendants. | Civil Action No. 4:24-cv-1518 |

| | |
|---|---|
| HEIDI MATHIASEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THOMPSON COBURN, LLP,<br><br>        Defendant. | Civil Action No. 4:24-cv-1522 |
| PAULA ORTIZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THOMPSON COBURN, LLP, and PRESBYTERIAN HEALTHCARE SERVICES,<br><br>        Defendants. | Civil Action No. 4:24-cv-1529 |
| M.R., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THOMPSON COBURN, LLP,<br><br>        Defendant. | Civil Action No. 4:24-cv-01536 |

| | |
|---|---|
| JOHNNY MADRID<br>as next of friend for D.L., a minor,<br>individually and on behalf of all others<br>similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THOMPSON COBURN, LLP, and<br>PRESBYTERIAN HEALTHCARE<br>SERVICES,<br><br>        Defendants. | Civil Action No. 4:24-cv-1542 |
| MARY MARTINEZ, individually and on<br>behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THOMPSON COBURN, LLP, and<br>PRESBYTERIAN HEALTHCARE<br>SERVICES,<br><br>        Defendants. | Civil Action No. 4:24-cv-1573 |

**MOTION AND MEMORANDUM IN SUPPORT OF MOTION
FOR CONSOLIDATION AND APPOINTMENT OF INTERIM CLASS COUNSEL**

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 42(a) and Local Rule 4.03, Plaintiffs Jason Salazar, Kristin Tafoya, Heidi Mathiasen, Denise Sandoval Duran, Paula Ortiz, Johnny Madrid (as next of friend for D.L., a minor), M.R., and Mary Martinez (collectively, "Plaintiffs") respectfully move for an order consolidating eight related proposed class actions (the "Related Cases") currently pending in the Eastern District of Missouri:

1.    *Salazar v. Thompson Coburn LLP et al.*, No. 4:24-cv-1509 (the "*Salazar* Action");

2.    *Tafoya v. Thompson Coburn LLP et al.*, No. 4:24-cv-1513 (the "*Tafoya* Action");

3.    *Duran v. Thompson Coburn LLP et al.*, No. 4:24-cv-1518 (the "*Duran* Action");

4.    *Mathiasen v. Thompson Coburn LLP*, No. 4:24-cv-1522 (the "*Mathiasen* Action");

5.    *Ortiz v. Thompson Coburn LLP et al.*, No. 4:24-cv-1529 (the "*Ortiz* Action");

6.    *M.R. v. Thompson Coburn LLP*, No. 4:24-cv-01536 (the "*M.R.* Action");

7.    *Madrid v. Thompson Coburn LLP et al.*, No. 4:24-cv-1542 (the "*Madrid* Action"); and

8.    *Martinez v. Thompson Coburn LLP et al.*, No. 4:24-cv-1573 (the "*Martinez* Action").

All eight of the Related Cases arise from the same data breach (the "Data Breach") experienced by Thompson Coburn LLP ("Thompson Coburn" or "Defendant") that allegedly compromised certain information of current or former patients of Presbyterian Healthcare Services ("Presbyterian" or "Defendant") (together "Defendants"). Critically, all eight of the Related Cases have similar claims regarding the Data Breach—which allegedly thereafter inflicted injuries on Plaintiffs and Class Members. The eight Related Cases listed above are the entirety of the cases filed in this District arising out of the Data Breach at issue. Given the substantial similarities

between the Related Cases, allowing the Related Cases to proceed as separate cases would unnecessarily burden judicial resources. Thus, consolidating the above-captioned cases at this early stage is in the best interest of the Parties, Class Members, and the Court. *See* Fed. R. Civ. P. 23(g), 42(a).

Moreover, Plaintiffs request that the Court appoint Jeff Ostrow of Kopelowitz Ostrow P.A., Raina Borrelli of Strauss Borrelli PLLC, and Norman E. Siegel of Stueve Siegel Hanson (collectively, "Proposed Interim Co-Lead Counsel") as interim class counsel pursuant to Fed. R. Civ. P. 23(g) to guide this litigation for the putative Class Members. Mr. Ostrow, Ms. Borrelli, and Mr. Siegel are nationally recognized as leaders in data breach litigation and have litigated dozens of data breach and privacy class actions. Moreover, their three firms have the resources necessary to prosecute and take a complex data breach class action like the one before this Court to trial. Thus, their appointment will best serve the Class. Mr. Siegel is also a member of the bar of this District.

In addition, Plaintiffs requests appointment of Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, Andrew Shamis of Shamis and Gentile P.A., Terrence R. Coates of Markovits, Stock & DeMarco, LLC, Michael Liskow of George Feldman McDonald, PLLC, Maureen Brady of McShane & Brady, LLC, Jessica A. Wilkes of Federman & Sherwood, and Leigh S. Montgomery of Elizey & Associates, PLLC to a Plaintiffs' Executive Committee to assist Interim Co-Lead Counsel (collectively, "Interim Class Counsel").

Proposed Interim Class Lead Counsel have been intimately involved in investigating, prosecuting, and coordinating this litigation, including the preparation and filing of this Motion. Appointment of Interim Class Counsel at this early juncture will facilitate coordinated prosecution of the Related Actions and the possibility of early potential resolution, thereby conserving judicial

resources.

As described herein, Plaintiffs' proposed leadership structure will permit them to prosecute these Related Actions efficiently and in the best interests of the putative Class. Proposed Interim Class Counsel are experienced in handling class action litigation, particularly data breach and privacy cases, and have performed substantial work investigating, originating, coordinating, and litigating Plaintiffs' claims. Further, Proposed Interim Class Counsel have the experience, knowledge, and resources to continue to prosecute an eventual consolidated action in the putative class members' best interest. Additionally, Proposed Interim Class Counsel have a history of working together and, in the event they are appointed as Interim Class Counsel, will continue to work cooperatively and effectively in accordance with the interests of the putative Class Members.[1]

## II.     BACKGROUND AND PROCEDURAL HISTORY

On or about May 28, 2024, an unauthorized threat actor unlawfully accessed the data systems of Thompson Coburn during the Data Breach. Doc. 1, ¶ 2–5.[2] Plaintiffs allege that the Data Breach exposed the personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") of Plaintiffs and Class Members. *Id*. In total, the Data

---

[1] Counsel for Plaintiffs have conferred with counsel for both Defendants. Defendants do not oppose consolidation of the eight Related Cases, as requested in this Motion. Defendants support appointment of interim lead class counsel, but take no position on who is appointed. While Defendants do not oppose consolidation for the sake of efficiency, Defendants do not agree with the allegations or characterization of Plaintiffs' claims set forth in this Motion, nor do Defendants concede or agree that common issues predominate or that this matter may proceed as a purported class action. Defendants reserve their rights to contend that no Plaintiff has stated a viable claim and that no class can be certified.

[2] All citations using the "¶" symbol refer to the complaint in the *Salazar* Action, ECF No. 1, unless otherwise indicated.

Breach allegedly exposed the Private Information of approximately 305,088 individuals (i.e., the Class).[3]

On November 12, 2024, Plaintiff Jason Salazar filed his class action complaint and alleged claims for negligence, breach of implied contract, unjust enrichment, and breach of third-party beneficiary contract. *See* Case No. 4:24-cv-1509, Doc. 1. Later that day, Plaintiff Kristin Tafoya filed her class action and complaint and alleged claims for negligence, negligence *per se*, breach of implied contract, breach of contract, unjust enrichment, and invasion of privacy. *See* Case No. 4:24-cv-01513, Doc. 1.

On November 13, 2024, Plaintiff Denise Sandoval Duran filed her class action and complaint and alleged claims for negligence, breach of implied contract, unjust enrichment, and breach of third-party beneficiary contract. *See* Case No. 4:24-cv-01518, Doc. 1. Later that day, Plaintiff Heidi Mathiasen filed her class action and complaint and alleged claims for negligence and breach of third-party beneficiary contract. *See* Case No. 4:24-cv-01522, Doc. 1.

On November 14, 2024, Plaintiff Paula Ortiz filed her class action and complaint and alleged claims for negligence, breach of implied contract, unjust enrichment, and breach of third-party beneficiary contract. *See* Case No. 4:24-cv-01529, Doc. 1.

On November 15, 2024, M.R. filed their class action and complaint and alleged claims for negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, and breach of confidence. *See* Case No. 4:24-cv-01536, Doc. 1. Later that day, Plaintiff Johnny Madrid (as next of friend for D.L., a minor) filed his class action and complaint and alleged claims of negligence, breach of implied contract, breach of fiduciary duty, and declaratory judgment. *See* Case No. 4:24-cv-01542, Doc. 1.

---

[3] *Cases Currently Under Investigation*, U.S. DEPT HEALTH & HUMAN SERVS, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited Dec. 4, 2024).

On November 22, 2024, Plaintiff Mary Martinez filed her class action and complaint and alleged claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaratory judgment. *See* Case No. 4:24-cv-01573, Doc. 1.

## III.   THE COURT SHOULD CONSOLIDATE THE ACTIONS

Fed. R. Civ. P. 42(a) allows for case consolidation "[w]hen actions involving a common question of law or fact are pending before the court" and "to avoid unnecessary costs or delay." *See McGinley v. Luv n' care, Ltd.*, 2017 WL 11446205, at *1 (W.D. Mo. May 30, 2017); *Keil v. Bearden*, 2021 WL 7708479, at *1 (W.D. Mo. Nov. 17, 2021) ("Consolidation is usually favored when two cases involve 'common parties, overlapping legal issues, and related factual scenarios.'") (citations omitted).

Local Rule 4.03 provides as follows: "A party desiring the consolidation of related cases shall file a motion in the case bearing the lowest cause number. The movant shall file in each related case a notice of the motion, to which a copy of the motion shall be attached. The district or magistrate judge presiding in the lowest-numbered case shall rule on the motion. If the motion is granted, the consolidated cases shall be reassigned to the judge presiding in the lowest-numbered case. Following consolidation, all documents shall be filed only in the lowest-numbered case, unless otherwise ordered by the Court."

### 1.  The Related Actions Share Common Questions of Law or Fact.

Consolidation of the Related Actions is proper because they indisputably share "common questions of law or fact" and consolidation will serve judicial convenience and reduce cost and delay. All Related Actions arise from the same data breach and are all pled as class actions and involve substantially identical complaints.

For the purposes of consolidation, Plaintiffs contend the Related Actions involve multiple common questions of law, including but not limited to: (a) whether Defendants breached their duty of care to Plaintiffs and Class Members when they failed to implement reasonable data security measures; (b) whether Defendants' failures allowed cybercriminals to gain unauthorized access to Thompson Coburn's data systems and steal the Private Information of Plaintiffs and Class Members; (c) whether Plaintiffs were harmed by Defendants' conduct related to the Data Breach. For the purposes of consolidation, Plaintiffs' contend that these common questions of fact and law predominate and favor consolidation. Courts consistently find that data breach class actions are particularly appropriate for consolidation. *See, e.g.*, *Johnson et al. v. Cornerstone National Insurance Company,* No. 22-cv-04135 (W.D. Mo. Mar 6, 2023), ECF No. 29 (ordering consolidation of two actions arising from a data breach); *Guy v. Convergent Outsourcing, Inc.*, No. 2:22-cv-01558 (W.D. Wash. Dec. 13, 2022), ECF No. 16 (ordering consolidation of four actions arising from a data breach); *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-3424 (N.D. Tex. Mar. 19, 2021), ECF No. 37 (ordering consolidation of three actions stemming from the same data breach).

## 2. Consolidation Promotes Judicial Economy and Avoids Unnecessary Cost and Delay.

In determining whether to consolidate cases, courts typically evaluate the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits and the risk of inconsistent adjudications of common factual and legal issues were the lawsuits to be tried separately. Here, the Related Actions are in the initial stages of litigation, and consolidation will reduce delay, confusion, and duplication of discovery, motion practice, and depositions. Plaintiffs' counsel anticipates that the Related Actions will involve substantially the same discovery. Thus,

9

consolidating the Related Actions will eliminate duplicative judicial work, prevent duplicative discovery and depositions, and avoid conflicting outcomes.

The Court should consolidate the Related Actions because they all allegedly involve common questions of law and fact, as detailed above, and subjecting the cases to Plaintiffs' proposed class leadership structure will facilitate the efficient prosecution of this litigation. Plaintiffs also respectfully request that the Court consolidate all subsequently filed, transferred, and removed cases on behalf of Class Members which arise from Defendants' Data Breach. Consolidation will streamline and simplify discovery, pretrial motions (including class certification), and administrative management, as well as generally prevent waste, confusion, or delay that would inevitably arise from separate prosecution of related actions. *See Bank of Montreal v. Eagle Associates*, 117 F.R.D. 530, 533 (S.D.N.Y. 1987) ("One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results."); *see also Cornell v. Soundgarden,* No. C20-1218, 2021 WL 1663924, at \*4 (W.D. Wash. Apr. 26, 2021) (considering judicial efficiency of resolving similar factual and legal issues in a consolidated action); *Ocean Ships, Inc. v. Stiles*, No. 00 Civ. 5469, 2003 WL 22741457, at \*3 (S.D.N. Y. 2003) ("Consolidating the two cases would also promote judicial efficiency by reducing discovery costs."). Consolidation will not only promote efficiency in the earlier stages of litigation and in discovery, but consolidation will also promote efficiency in pre-trial motion practice. Consolidating the eight cases will avoid duplication of effort and the risk of inconsistent decisions and unfairness that may result in eight different judges reviewing the same facts to make determinations about the likelihood of success of the claims against Defendants.

All Plaintiffs agree that consolidation will promote efficiency for the parties, who would otherwise needlessly incur legal fees and costs. Each of the eight lawsuits were filed in November

2024 (placing these lawsuits in nearly identical positions in the life cycle of a case). Moreover, Defendants have not responded to the complaints in any of the eight lawsuits. Therefore, there is no possibility of prejudice to Defendants that would outweigh the improved efficiency of consolidation. *See Bank of Montreal*, 117 F.R.D at 534 (granting consolidation where any prejudices of consolidation were "merely speculative and not grounded in fact" and did not outweigh the interests of judicial economy).

### 3. Future Filed Related Cases Should be Consolidated.

To ensure continued judicial efficiency, Plaintiffs in each of the Related Actions jointly and respectfully request that the Court order that any future actions that are filed, removed, or transferred to this Court and are based on the same or similar facts and circumstances be consolidated in the proposed master action: *In re: Thompson Coburn Data Security Litigation*, Case No. 4:24-cv-1509.

### IV.   THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL

### 1. Legal Standard

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of interim lead counsel "to act on behalf of putative class members before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Early appointment of interim class counsel is warranted when there are competing "copycat" filings *or* the risk of such filings. Multiple identical or similar actions prevent efficient prosecution of claims, disjointed legal strategy, and prejudice to both defendants, plaintiffs, and putative class members. *See Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 867 (E.D. Mich. 2019) ("Designation of interim counsel is particularly appropriate when a number of lawyers have filed related 'copycat' actions."); *Ekin v. Amazon Servs., LLC*, No. C14-0244-JCC, 2014 WL 12028588, at *3 (W.D. Wash. May 23, 2014) ("designation of interim counsel clarifies responsibility for protecting the interests of the class during

11

precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.") (quoting MANUAL OF COMPLEX LITIGATION § 21.11 (4th ed. 2004)).

Rule 23(g) contemplates early appointment of class counsel, even where there are no competing applications. *See Duqum v. Scottrade, Inc.*, No. 4:15-cv-1537-SPM, 2016 WL 1700427, at *1 (E.D. Mo. Apr. 28, 2016). Indeed, the Advisory Committee Notes to Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." Designating class counsel now ensures the protection of the interests of the Class in making and responding to motions, conducting discovery, and negotiating possible settlements. *See Leeb v. Charter Comm'ns, Inc.*, No. 4:17CV2780 RLW, 2019 WL 1372587, at *1 (E.D. Mo. Apr. 3, 2019); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012) (citing *Manual for Complex Litig.* § 21.11 (4th ed. 2004)).

Determining the appointment of interim class counsel requires the court to consider counsel's: (1) work in identifying and investigating potential claims; (2) experience in handling class action and complex litigation and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) available resources. *Roe v. Arch Coal, Inc.*, No. 4:15-cv-910 (CEJ), 2015 WL 6702288, at *2 (E.D. Mo. Nov. 2, 2015) (citing Fed. R. Civ. P. 23(g)(1)(A)). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* (citing Fed. R. Civ. P. 23(g)(1)(B)). The purpose of this Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." *Manual for Complex Litig.* § 10.22 (4th ed. 2004). The ultimate goal is "achieving

12

efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221; *see also Cappello v. Franciscan All., Inc.*, No. 3:16-CV-290-TLS-MGG, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017). Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the relative strengths of counsel. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); 7B Charles Alan Wright et al., FEDERAL PRACTICE. & PROCEDURE § 1802.3 (3d ed. 2005).

### 2. The Court Should Appoint Ostrow, Borrelli, and Siegel as Interim Co-Lead Counsel Under Rule 23(g).

As Plaintiffs demonstrate below, Proposed Interim Co-Lead Counsel satisfy all requirements for appointment by the Court.

### i. *Proposed Interim Co-Lead Counsel have Performed Substantial Work Investigating and Litigating the Claims.*

Proposed Interim Co-Lead Counsel have been diligent in investigating and advancing this litigation. Counsels' investigations prior to filing the Related Actions included, without limitation, analyzing the circumstances surrounding the Data Breach, interviewing individuals injured by the Data Breach, researching potential legal claims, drafting initial pleadings and statutory notices, and organizing Plaintiffs and counsel to self-consolidate the actions and move the litigation forward. Indeed, Proposed Interim Co-Lead Counsel worked to quickly organize and avoid any delay that could be caused by a leadership dispute to address the merits of the case as expeditiously as possible. Proposed Interim Co-Lead Counsel's efforts at self-organization were successful, as evidenced by this Motion.

Going forward, and if appointed, Proposed Interim Co-Lead Counsel will establish a standardized protocol for managing and reporting time and expenses incurred. Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Co-Lead

13

Counsel under Fed. R. Civ. P. 23(g)(3).

> ### *ii.    Proposed Interim Co-Lead Counsel Have Significant Relevant Experience.*

Proposed Interim Co-Lead Counsel are well-qualified to lead this case. Each member has a track record of successfully litigating and resolving consumer class actions, particularly data breach class actions. Proposed Interim Co-Lead Counsel have ample experience handling class actions—including class actions involving data breaches—complex litigation, and consumer claims. The qualifications and experience of Proposed Interim Co-Lead counsel are set forth below.

### *Jeff Ostrow of Kopelowitz Ostrow P.A.*

Jeff Ostrow is the Managing Partner of KO and has been practicing law for 27 years.[4] Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 25 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow is counsel of record in more than 200 pending data breach cases. He is currently Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people. Additional examples of other cases in which he serves as Lead Counsel include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals; *In re Zeroed-In Techs., LLC Data*

---

[4] A copy of the Kopelowitz Ostrow P.A. firm resume is attached hereto as ***Exhibit A***.

*Breach Litig.*, No. 1:23-cv-03284-BAH (D. Md.), affecting two million individuals, *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), affecting 2.5 million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, 2:24-cv-146 (D. Me.), affecting 1.1 million individuals; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D. Neb.), affecting at least 106,540 patients; *Wilson v. Frontier Comm'ns Parent, Inc.*, No. 3:23-CV-01418-L (N.D. Tex.), affecting at least 750,000 individuals; *Flores v. S. Tex. Oncology & Hematology, PLLC*, No. 2024CI13299 (Tex. Dist. Ct., Bexar Cty.), affecting 176,303 patients; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; *Griffiths v. Kootenai Health, Inc.*, No. 2:24-cv-205 (D. Idaho), affecting 827,149 patients, and *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients.

For about 13 years, Mr. Ostrow's firm served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litigation*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, KO is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead

15

counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, United States District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

Mr. Ostrow has worked productively with Proposed Interim Co-Lead Counsel in many other cases. He is confident that this proposed leadership structure will result in an excellent recovery for all clients and Class Members.

### *Raina Borrelli of Strauss Borrelli PLLC*

Raina Borrelli is a is a founding partner of Strauss Borrelli PLLC where she leads the firm's class action litigation practice. [5] Ms. Borrelli received her J.D. magna cum laude from the University of Minnesota Law School in 2011. Prior to joining Strauss Borrelli, Ms. Borrelli was a partner at Gustafson Gluek PLLC, a boutique class action firm in Minneapolis, Minnesota, where she successfully prosecuted complex class actions in federal and state courts, including *Hudock v. LG Electronics USA, Inc.*, 16-cv-1220 (JRT/KMM) (D. Minn.); *Baldwin v. Miracle-Ear, Inc.*, 20-cv-01502 (JRT/HB) (D. Minn.); *In re FCA Monostable Gearshifts Litig.*, 16-md-02744 (E.D. Mich.); *Zeiger v. WellPet LLC*, 17-cv-04056 (N.D. Cal.); *Wyoming v. Procter & Gamble*, 15-cv-2101 (D. Minn.); *In re Big Heart Pet Brands Litig.*, 18-cv-00861 (N.D. Cal.); *Sullivan v. Fluidmaster*, 14-cv-05696 (N.D. Ill.); *Rice v. Electrolux Home Prod., Inc.*, 15-cv-00371 (M.D. Pa.); *Gorczynski v. Electrolux Home Products, Inc.*, 18-cv-10661 (D.N.J.); *Reitman v. Champion Petfoods*, 18-cv-1736 (C.D. Cal.); *Reynolds, et al., v. FCA US, LLC*, 19-cv-11745 (E.D. Mich.). Ms. Borrelli has repeatedly been named to the annual Minnesota "Rising Star" Super Lawyers list (2014-2021) by SuperLawyers Magazine. She has also been repeatedly certified as a North Star Lawyer by the Minnesota State Bar Association (2012-2015; 2018-2020) for providing a minimum of 50 hours of pro bono legal services.

Ms. Borrelli has significant experience in data privacy litigation and is currently litigating more than one hundred data breach cases in courts around the country as lead counsel or co-counsel on behalf of millions of data breach victims, including *In re Netgain Tech. Consumer Data Breach Litig.*, 21-cv-1210 (D. Minn.) (appointed by the court to the Plaintiffs' Interim Executive Committee); *In re C.R. England, Inc. Data Breach Litig.*, 2:22-cv-374-DAK-JCB (appointed by

---

[5] A copy of Strauss Borrelli PLLC's firm resume is attached hereto as ***Exhibit B***.

the court has Interim Co-Lead Counsel); *Medina et al. v. PracticeMax Inc.*, 22-cv-01261-DLR (D. Ariz.) (appointed to Executive Leadership Committee); *Forslund et al. v. R.R. Donnelley & Sons Co.*, 1:22-cv-04260 (N.D. Ill.) (appointed as interim co-lead class counsel); *In re Lincare Holdings, Inc. Data Breach Litig.*, 8:22-cv-01472 (M.D. Fla.) (appointed to Interim Executive Leadership Committee, achieving a $7.25 million settlement for the class); *McLaughlin v. Flagstar*, 22-cv-11470 (E.D. Mich.); *Corra et al. v. Acts Retirement Services, Inc.*, 2:22-cv-02917 (E.D. Pa.); *Grogan v. McGrath RentCorp., Inc.*, 22-cv-490 (N.D. Cal.); *Darrin et al. v. Huntington Ingalls Indus.*, 4:23-cv-00053 (E.D.V.A.) (appointed interim co-lead class counsel); *Hulewat et al. v. Medical Management Resource Group, LLC*, 2:24-cv-00377 (D. Ariz.) (appointed Interim Co-Lead Class Counsel).

In addition to her robust data breach practice, Ms. Borrelli is also currently litigating a variety of consumer protection cases, including under the TCPA, various state right of publicity laws, and under the Illinois Biometric Information Privacy Act, including: *Murray, et al. v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, 19-cv-12608 (D. Mass.) ($14 million TCPA class settlement); *Baldwin, et al. v. Miracle-Ear, Inc., et al.*, 20-cv-1502 (D. Minn.) ($8 million TCPA class settlement); *Callahan v. PeopleConnect, Inc.*, 20-cv-9203 (N.D. Cal.); *Kellman et al. v. Spokeo*, 21-cv-08976 (N.D. Cal.); *DeBose v. Dun & Bradstreet Holdings, Inc.*, 22-cv-00209 (D.N.J.).

Additionally, Ms. Borrelli has substantial experience leading discovery teams in complex class action matters and working with class damages experts and class damages models in consumer protection cases.

### *Norman E. Siegel of Stueve Siegel Hason LLP*

Mr. Siegel is a graduate of the Washington University in St. Louis School of Law and a

founding partner of Stueve Siegel Hanson.[6] He has over 30 years' experience litigating and trying complex cases and over the last decade has served at the vanguard of data breach litigation. He has been appointed lead counsel in over 20 data breach cases around the country including serving as co-lead counsel in the three largest data breach cases resolved to date: *In re: Equifax* ($1.5 billion settlement); *In re: T-Mobile* ($500 million settlement); and *In re: Capital One* ($190 million settlement). Mr. Siegel's and his firm's work in this field includes achieving groundbreaking opinions in both trial and appellate courts, including successfully arguing the key data breach standing cases in the Fourth Circuit, *Hutton v. National Board of Examiners in Optometry*, 892 F.3d 613 (4th Cir. 2018), and the Third Circuit, *Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022)—both reversing dismissal of data breach class actions for lack of Article III standing. The firm's data breach practice has touched on every conceivable type of data breach, including breaches of the types of information at issue here, and has successfully litigated every common law and statutory claim imaginable. Mr. Siegel has been repeatedly recognized for his work in the field, including being awarded *Law360*'s "MVP of the Year" and "Practice Group of the Year" for Cybersecurity & Privacy Litigation, and recently *Law360*'s 2023 "MVP of the Year" for Class Actions, recognizing his recent class action jury verdict against State Farm and $1 billion in settlements and verdicts achieved over the last two years. He is the founder of the American Association for Justice's Consumer Privacy and Data Breach Group, a member of the American Law Institute and a frequent speaker to both the bench and bar on significant issues in data breach litigation.

This substantive experience in the data breach field will benefit the class and Court in this case as it will narrow the contested issues and promote arguments that have the best opportunities

---

[6] A copy of the Stueve Siegel Hanson firm resume is attached hereto as ***Exhibit C***.

19

for success. Moreover, through Mr. Siegel's leadership in designing and negotiating the largest data breach settlements reached to date, he has been a thought leader in case resolution, bringing maximum relief to the class in the most efficient manner. As Judge Trenga remarked in recently approving the *Capital One* MDL settlement: "Class Counsel were carefully selected for their skill and experience in a process that featured more than three dozen applications for class leadership. The performance of counsel and the strong result for class members demonstrates Class Counsel's skill and efficiency and validates the Court's selection." *In re: Capital One Consumer Data Sec. Breach Litig.*, 2022 WL 17176495 at *2 (E.D. Va., Nov. 17, 2022).

### iii.     Proposed Interim Co-Lead Counsel have Committed, and will Continue to Commit, the Resources Necessary to Represent the Class.

A court appointing interim lead counsel should consider, in part, the resources that counsel will commit to representing the putative classes. Fed. R. Civ. P. 23(g)(1)(C). Proposed Interim Co-Lead Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. Each firm understands the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the Class Members. In fact, Proposed Interim Co-Lead Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to prosecuting this action. Proposed Interim Co-Lead Counsel have already engaged in discussions with experts and have expended significant resources in investigating the data breach, communicating with affected individuals, researching, and drafting complaints. To ensure that adequate funds are available to prosecute this litigation on behalf of the putative Class, Proposed Interim Co-Lead Counsel will also establish a system to pay assessments proportional to the needs of the case. And, as their firm resumes and counsels' experience indicate, Proposed Interim Co-Lead Counsel have the resources and willingness to see this litigation through to its conclusion,

20

including trial.

### iv.    Other Factors Support Designating Proposed Interim Co-Lead Counsel.

Notably, the proposed leadership structure has the support of all the Related Actions, including the proposed Plaintiffs' Executive Committee. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at **5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel. Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); MANUAL FOR COMPLEX LITIG. §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Proposed Interim Co-Lead Counsel's success in self-organizing and securing each other's support demonstrates their suitability for leadership roles.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the court, all of which are critical to successful management of the litigation. *See* MANUAL FOR COMPLEX LITIG. § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*.

The plaintiffs' side of consolidated litigation often must quickly and effectively merge together to form an alliance against often well-financed opponents. Here, counsel in the Related Actions, including the Proposed Executive Committee members, have coordinated organizational efforts. Because the consolidation process has the potential to breed disorganization, in-fighting, and inefficiencies, it is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines"), at 43. Selecting lawyers who have previously worked together, as is the case here with Proposed Class Counsel, has many benefits. They have developed working relationships, know of complimentary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*. Proposed Interim Class Counsel have strong working relationships with each other that will benefit the Class and, recognizing this, moved quickly and effectively to organize the Related Actions to put forward the leadership structure proposed herein.

Importantly, Proposed Interim Co-Lead Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. Proposed Interim Co-Lead Counsel understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party funding to do so. While Proposed Interim Co-Lead Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. To this end, Proposed Interim Co-

22

Lead Counsel have already discussed how best to organize to effectively use their diverse skills and unique experiences for the efficient prosecution and management of this litigation, while avoiding unnecessary and duplicative billing.

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

1) Consolidating the Related Actions under the master case caption *In re: Thompson Coburn Data Security Litigation*, Case No. 4:24-cv-1509;

2) Striking all pending deadlines in each of the Related Actions and staying each of the Related Actions, including any of the Defendants' responsive pleading deadlines;

3) Consolidating any future-filed, transferred, or removed case that arises out of the same subject matter as the Related Actions;

4) Appointing Jeff Ostrow of Kopelowitz Ostrow P.A., Raina Borrelli of Strauss Borrelli PLLC, and Norman E. Siegel of Stueve Siegel Hanson as Interim Co-Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3);

5) Appointing Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, Terrence R. Coates of Markovits, Stock & DeMarco, LLC, Michael Liskow of George Feldman McDonald, PLLC, Maureen Brady of McShane & Brady, LLC, Jessica A. Wilkes of Federman & Sherwood, and Leigh S. Montgomery of Elizey & Associates, PLLC to a Plaintiffs' Executive Committee;

6) Setting a deadline of 30 days following the entry of an order appointing Interim Co-Lead Class Counsel for the filing of a Consolidated Class Action Complaint; and

23

7)      Setting deadlines for Defendants to respond to the Consolidated Class Action Complaint of 30 days after it is filed, and if the response(s) are motion(s) to dismiss, for Plaintiffs to respond to the motion(s) to dismiss as 30 days thereafter and Defendants to file a reply(ies) in support of their motion(s) as 20 days thereafter.

DATED: December 20, 2024.          Respectfully submitted,

/s/ *Jeff Ostrow*_____
Jeff Ostrow*
**KOPELOWITZ OSTROW PA**
One West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
T: 954-525-4100
ostrow@kolawyers.com

*Attorney for Plaintiff Jason Salazar*

Norman E. Siegel (SBN: 44378)
**STUEVE SIEGEL LLP**
460 Nichols Road Suite 200
Kansas City, MO 64112
T: 816-714-7100
siegel@stuevesiegel.com

*Attorney for Plaintiff Mary Martinez*

Raina C. Borrelli*
Samuel J. Strauss**
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
T: 872-263-1100
raina@straussborrelli.com
sam@straussborrelli.com

*Attorneys for Plaintiff Kristin Tafoya*

Andrew Shamis (SBN: 76124)
**SHAMIS AND GENTILE PA**
14 N.E. 1st Ave Suite 705
Miami, FL 33132
T: 305-479-2299
F: 786-623-0915
ashamis@shamisgentile.com

24

*Attorney for Plaintiff Jason Salazar, Denise Sandoval Duran, Paula Ortiz, and Johnny Madrid (as next of friend for D.L., a minor)*

Leigh S. Montgomery**
**EKSM, LLP**
1105 Milford Street
Houston, Texas 77006
T: 888-350-3931
F: 888-276-3455
lmontgomery@eksm.com

*Attorneys for Plaintiff Heidi Mathiasen*

Gary M. Klinger*
**MILBERG COLEMAN PLLC**
227 W. Monroe Street Suite 2100
Chicago, IL 60606
T: 866-252-0878
gklinger@milberg.com

*Attorney for Plaintiff Denise Sandoval Duran*

Terence R. Coates**
Spencer D. Campbell**
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
T: 513-651-3700
tcoates@msdlegal.com
scampbell@msdlegal.com

*Attorneys for Plaintiff Paula Ortiz*

William B. Federman**
Jessica A. Wilkes**
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave
Oklahoma City, OK 73120
T: 405-235-1560
wbf@federmanlaw.com
jaw@federmanlaw.com

*Attorneys for Plaintiff Johnny Madrid (as next of friend for D.L., a minor)*

25

Maureen M. Brady (SBN: 57800)
**MCSHANE AND BRADY LLC**
4006 Central Street
Kansas City, MO 64111
T: 816-888-8010
mbrady@mcshanebradylaw.com

Lori G. Feldman**
Michael Liskow**
**GEORGE FELDMAN MCDONALD, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
T: 917-983-9321
lfeldman@4-justice.com
mliskow@4-justice.com

*Attorneys for Plaintiff M.R.*

Daniel F. Harvath (SBN: 57599)
**HARVATH LAW GROUP LLC**
75 W. Lockwood Suite 1
St. Louis, MO 63119
T: 314-550-3717
dharvath@harvathlawgroup.com

*Pro Hac Vice Granted
**Pro Hac Vice Forthcoming*

26