**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| IN RE: THOMPSON COBURN DATA SECURITY LITIGATION, | ) | Master File No. 4:24-cv-1509 |
| | ) | |
| | ) | |
| This Document Relates To: All Matters | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PRESBYTERIAN HEALTHCARE SERVICES' MOTION TO DISMISS**
<u>**THE CONSOLIDATED CLASS ACTION COMPLAINT**</u>

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................1

ARGUMENT ..........................................................................................................4

I.      Plaintiffs' Pleading Burden..........................................................................4

II.     Plaintiffs' Common Law Claims Should Be Dismissed Pursuant to Rule 12(b)(6)...........5

        A.    Plaintiffs' Claims Require Dismissal Regardless of Whether Missouri or New Mexico Law Applies...........5

        B.    Plaintiffs' Claims All Lack Cognizable Injury and Damages ...............5

              1.    Lost Time Is Not a Cognizable Injury .......................................7

              2.    Increased Spam Emails and Calls Are Not Cognizable Injuries.................7

              3.    Plaintiffs Do Not Allege Sufficient Facts to Support Their Diminished Value of PII Injury ...................8

              4.    Plaintiffs' Benefit of the Bargain Damages Are Not Cognizable...............9

              5.    Potential Future Harm and Emotional Distress Are Not Cognizable Injuries ................10

              6.    Attempted Identity Theft or Fraud Is Not Cognizable.............................11

        C.    Even if Plaintiffs Pled Cognizable Damages, Their Common Law Claims Against PHS Must Still Be Dismissed ................12

              1.    Plaintiffs' Negligence Claim Does Not Satisfy the Duty, Breach, and Causation Requirements ...................13

              2.    The FTC Act and HIPAA Are Not a Basis for Negligence *Per Se* ..........16

              3.    Plaintiffs' Negligence and Negligence *Per Se* Claims Are Barred by the Economic Loss Doctrine.................17

              4.    Plaintiffs' Breach of Implied Contract Claim Cannot Proceed Because They Have Not Alleged an Enforceable Contract Exists or that PHS Breached Any "Contract" ..................18

              5.    PHS Was Not Unjustly Enriched Because Plaintiffs Received the Healthcare Services They Paid For..........20

      6.     PHS Did Not Affirmatively Disclose Plaintiffs' PII to Criminals, and Plaintiffs Waived the Fiduciary Duty of Confidentiality with Respect to PHS's Sharing of Information with Thompson Coburn ............................21

III.    The Court Should Dismiss Plaintiffs' MMPA Claim .........................................................22

     A.    The MMPA Does Not Apply Here ........................................................................23

     B.    Plaintiffs Do Not Allege Loss in Relation to a Sale of "Merchandise" ................23

     C.    Plaintiffs Do Not Allege an Ascertainable Loss of Money or Property ................24

IV.    Plaintiffs' Declaratory Judgment Claim is Not a Standalone Cause of Action ................25

CONCLUSION....................................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ables v. Brooks Bros. Grp.*,
   2018 WL 8806667 (C.D. Cal. June 7, 2018) ........................................................10

*Allen v. Novant Health, Inc.*,
   2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ......................................................21

*Alumbaugh v. Union Pac. R.R. Co.*,
   322 F.3d 520 (8th Cir. 2003) ...............................................................................16

*Amburgy v. Express Scripts, Inc.*,
   671 F. Supp. 2d 1046 (E.D. Mo. 2009) ................................................................24

*Anderson v. Bass Pro Outdoor World, LLC*,
   355 F. Supp. 3d 830 (W.D. Mo. 2018) ...................................................................9

*Armijo v. Affilion, LLC*,
   2020 WL 2797685 (D.N.M. May 29, 2020) ............................................................6

*In re Arthur J. Gallagher Data Breach Litig.*,
   631 F. Supp. 3d 573 (N.D. Ill. 2022) ...................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................4, 6, 14, 15

*Attias v. CareFirst, Inc.*,
   365 F. Supp. 3d 1 (D.D.C. 2019) .......................................................................9, 11

*Barker v. Nestle Purina PetCare Co.*,
   601 F. Supp. 3d 464 (E.D. Mo. 2022) ..................................................................23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................4, 14, 15

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   567 F. Supp. 3d 667 (D.S.C. 2021) ......................................................................16

*Blair v. City of Hannibal*,
   179 F. Supp. 3d 901 (E.D. Mo. 2016) ..................................................................20

*In re Brinker Data Incident Litig.*,
   2020 WL 691848 (M.D. Fla. Jan. 27, 2020) .........................................................22

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
    238 F. Supp. 3d 1359 (S.D. Fla. 2017) ...............................................................18, 19

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. 2009) ........................................................................7

*Corona v. Sony Pictures Ent., Inc.*,
    2015 WL 3916744 (C.D. Cal. June 15, 2015) ............................................................7

*U.S. ex rel. Custom Grading, Inc. v. Great Am. Ins. Co.*,
    952 F. Supp. 2d 1259 (D.N.M. 2013) ......................................................................17

*Dieffenbach v. Barnes & Noble, Inc.*,
    887 F.3d 826 (7th Cir. 2018) .....................................................................................9

*Dittmer Props., L.P. v. F.D.I.C.*,
    708 F.3d 1011 (8th Cir. 2013) .............................................................................4, 12

*Dorman v. Emerson Elec. Co.*,
    23 F.3d 1354 (8th Cir. 1994) .....................................................................................5

*Dubinsky v. Mermart, LLC*,
    595 F.3d 812 (8th Cir. 2010) ...................................................................................17

*Fam. Dollar Stores of Missouri, LLC v. Tsai's Inv., Inc.*,
    2022 WL 355109 (E.D. Mo. Feb. 7, 2022) .............................................................25

*Fernandez v. Leidos, Inc.*,
    127 F. Supp. 3d 1078 (E.D. Cal. 2015).....................................................................7

*Fox v. Iowa Health Sys.*,
    399 F. Supp. 3d 780 (W.D. Wis. 2019) ...................................................................17

*Gardiner v. Walmart Inc.*,
    2021 WL 4992539 (N.D. Cal. July 28, 2021).........................................................10

*Gould v. Wyse*,
    2022 WL 980188 (D.N.M. Mar. 31, 2022)..............................................................18

*Griffey v. Magellan Health Inc.*,
    562 F. Supp. 3d 34 (D. Ariz. 2021) ...........................................................................8

*Hale v. Emerson Elec. Co.*,
    942 F.3d 401 (8th Cir. 2019) ...................................................................................23

*Harris v. Mercy Health Network, Inc.*,
    2024 WL 5055556 (S.D. Iowa June 26, 2024) ........................................................19

*Hennessey v. Gap, Inc.*,
  86 F.4th 823 (8th Cir. 2023) ...........................................................................20

*Horizon/CMS Healthcare Corp. v. Am. Cont'l Ins. Co.*,
  2000 WL 36740002 (D.N.M. May 2, 2000) ....................................................6

*Hosp. Prods., Inc. v. Sterile Design, Inc.*,
  734 F. Supp. 896 (E.D. Mo.).............................................................................5

*Hummel v. Teijin Auto. Techs., Inc.*,
  2023 WL 6149059 (E.D. Mich. Sept. 20, 2023) ...........................................15

*Inghram v. Mut. of Omaha Ins. Co.*,
  170 F. Supp. 2d 907 (W.D. Mo. 2001) ..........................................................22

*Irwin v. Jimmy John's Franchise, LLC*,
  175 F. Supp. 3d 1064 (C.D. Ill. 2016) ........................................................9, 10

*Jackson v. Loews Hotels, Inc.*,
  2019 WL 6721637 (C.D. Cal. July 24, 2019) ..................................................7

*Jasso v. Johnson & Johnson*,
  2013 WL 12328873 (D.N.M. Dec. 4, 2013) ..................................................16

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941)...........................................................................................5

*Krottner v. Starbucks Corp.*,
  406 F. App'x 129 (9th Cir. 2010) ..................................................................18

*Kuhns v. Scottrade, Inc.*,
  868 F.3d 711 (8th Cir. 2017) ................................................................. *passim*

*LO NG Pharm. Corp. v. Express Scripts, Inc.*,
  747 F. Supp. 3d 1203 (E.D. Mo. 2024)..........................................................25

*Longenecker-Wells v. Benecard Servs. Inc*,
  658 F. App'x 659 (3d Cir. 2016) ...................................................................18

*Mackey v. Belden, Inc.*,
  2021 WL 3363174 (E.D. Mo. Aug. 3, 2021)..............................................5, 17

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  603 F. Supp. 3d 1183 (S.D. Fla. 2022) ................................................16, 19, 24

*Newman v. Terminix Int'l, Inc.*,
  2019 WL 8014408 (E.D. Mo. Mar. 26, 2019) ...............................................23

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)...........................................................................19

*OS33 v. CenturyLink Commc'ns, L.L.C.*,
2018 WL 2267910 (E.D. Mo. May 17, 2018) ......................................................................25

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ...................................................................................17

*Perras v. H & R Block*,
789 F.3d 914 (8th Cir. 2015) ................................................................................................23

*Pisciotta v. Old Nat. Bancorp*,
499 F.3d 629 (7th Cir. 2007) ...........................................................................................6, 14

*Provost v. Aptos, Inc.*,
2018 WL 1465766 (N.D. Ga. Mar. 12, 2018).......................................................................12

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ..........................................................................................6

*Pruchnicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020).............................................................................. *passim*

*Reeves v. 21st Cent. Centennial Ins. Co.*,
2022 WL 2209412 (E.D. Mo. June 21, 2022) ......................................................................25

*Rehkemper & Sons, Inc. v. Mid-Rivers Dev. and Constr. LLC*,
2021 WL 6072496 (E.D. Mo. Dec. 23, 2021) ......................................................................25

*Ronnoco Coffee, LLC v. Westfeldt Bros., Inc.*,
939 F.3d 914 (8th Cir. 2019) ..................................................................................................5

*In re SAIC Backup Tape Data Theft Litig.*,
45 F. Supp. 3d 14, 33 (D.D.C. 2014) .................................................................................7, 8

*San Cristobal Acad., Inc. v. Transitional Living Corp.*,
2012 WL 6605992 (D.N.M. July 13, 2012).............................................................................5

*In re Santa Fe Nat. Tobacco Co.*,
288 F. Supp. 3d 1087 (D.N.M. 2017) ...................................................................................21

*Schmidt v. ABF Freight Sys., Inc.*,
2019 WL 4820136 (D.N.M. Oct. 1, 2019)...............................................................................5

*St. Paul Fire & Marine Ins. Co. v. Schrum*,
149 F.3d 878 (8th Cir. 1998) ..................................................................................................6

*In re SuperValu*,
    2018 WL 1189327 (D. Minn. Mar. 7, 2018) ......................................................12

*In re Supervalu*,
    870 F.3d 763 (8th Cir. 2017) ........................................................................10

*In re SuperValu, Inc.*,
    925 F.3d 955 (8th Cir. 2019) ...........................................................7, 9, 11, 20

*Svenson v. Google, Inc.*,
    2016 WL 8943301 (N.D. Cal. Dec. 21, 2016)................................................8

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014).............................................................18

*Thompson v. Allergan USA, Inc.*,
    993 F. Supp. 2d 1007 (E.D. Mo. 2014)............................................................24

*Torres v. Wendy's Co.*,
    195 F. Supp. 3d 1278 (M.D. Fla. 2016) ..........................................................12

*Wallace v. Health Quest Sys., Inc.*,
    2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) .................................................8

*In re Waste Mgmt. Data Breach Litig.*,
    2022 WL 561734 (S.D.N.Y. Feb. 24, 2022).....................................................15

*Winter v. New Mexico Dept. of Workforce Sols.*,
    2022 WL 4132740 (D.N.M. Sept. 12, 2022) ...................................................25

*Zoltek Corp. v. Structural Polymer Grp., Ltd.*,
    2008 WL 4921611 (E.D. Mo. 2008)................................................................17

**State Cases**

*Amalaco, LLC v. Butero*,
    593 S.W.3d 647 (Mo. Ct. App. 2019).............................................................21

*Biersmith v. Curry Ass'n Mgmt.*
    359 S.W.3d 84 (Mo. Ct. App. 2011)................................................................11

*Brandt v. Med. Def. Assocs.*,
    856 S.W.2d 667 (Mo. 1993) .....................................................................21, 22

*City of Rio Rancho v. Amrep Sw. Inc.*,
    260 P.3d 414 (N.M. 2011) ..............................................................................20

*Ciup v. Chevron U.S.A., Inc.*,
    928 P.2d 263 (N.M. 1996) ..............................................................................13

*Ferrell v. Allstate Ins. Co.*,
 188 P.3d 1156 (N.M. 2008) ..................................................................5

*Henry v. Farmers Ins. Co.*,
 444 S.W.3d 471 (Mo. Ct. App. 2014) ....................................................6

*Herrera v. Quality Pontiac*,
 73 P.3d 181 (N.M. 2003) ....................................................................13

*Hollis ex rel. Hollis v. Poplar Bluff Reg. Med. Ctr.*,
 674 S.W.3d 76 (Mo. Ct. App. 2023) ....................................................13

*Howard v. Turnbull*,
 316 S.W.3d 431, 436 (Mo. App. 2010) ...............................................20

*Jarrett v. Jones*,
 258 S.W.3d 442 (Mo. 2008) ..................................................................5

*Jones v. Schoellkopf*,
 122 P.3d 844 (N.M. Ct. App. 2005) .....................................................11

*Lowdermilk v. Vescovo Bldg. & Realty Co.*,
 91 S.W.3d 617 (Mo. Ct. App. 2002) ......................................................5

*Nickel v. Stephens Coll.*,
 480 S.W.3d 390 (Mo. Ct. App. 2015) ..................................................18

*Orthman v. Premiere Pediatrics, PLLC*,
 545 P.3d 124 (Okla. Civ. App. 2024) ..................................................21

*Peters v. Wady Indus., Inc.*,
 489 S.W.3d 784 (Mo. banc 2016) ........................................................13

*Tafoya v. Seay Bros. Corp.*,
 890 P.2d 803 (N.M. 1995) .....................................................................5

**Federal Statutes**

15 U.S.C. § 45 (Federal Trade Commission Act Section 5) ..........................16

28 U.S.C. § 2201 (Declaratory Judgment Act) ............................................25

**State Statutes**

Mo. Rev. Stat. § 407.020 ........................................................22, 23, 24, 25

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................ *passim*

**Regulations**

45 C.F.R. § 164.520(b) ...................................................................................................19

**Other Authorities**

5B Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1357 (3d ed.
      2004) ..........................................................................................................................4

## INTRODUCTION

This case concerns Plaintiffs' claims that third-party criminals gained access to Defendant Thompson Coburn LLP's ("Thompson Coburn") computer systems; that Thompson Coburn's "data breach" resulted in the compromise of Plaintiffs' personal information; that Thompson Coburn was somehow negligent in preventing the attack by the third-party criminals; and that Thompson Coburn is liable to Plaintiffs as a result for a variety of potential damages.

But Plaintiffs also sued Presbyterian Healthcare Services ("PHS"), a healthcare system in New Mexico. However, as Plaintiffs' Consolidated Class Action Complaint ("Complaint" or "Compl.") concedes, PHS's systems were not "breached," and none of Plaintiffs' information was taken by the third-party criminals from PHS's systems. PHS is merely a client who retained Thompson Coburn to provide legal services, and thus some of PHS's information (including, allegedly, some information relating to Plaintiffs, who were patients at PHS facilities) was contained within Thompson Coburn's computer network. As a result, far from being responsible for the "data breach," PHS was itself also a victim of it.

PHS fully supports Thompson Coburn's motion to dismiss the claims against it, but, in any event, there is no basis for PHS to remain a defendant in this case. PHS therefore separately moves to dismiss as to all claims against it with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

Thompson Coburn is a nationwide general practice law firm. Compl. ¶ 3. Thompson Coburn "represents that it uses 'state-of-the-art technology'" and is an "expert in data privacy and security and handling highly sensitive aspects of its clients' business." *Id.* ¶¶ 25, 28. PHS is a healthcare provider that owns and operates nine hospitals throughout New Mexico. *Id.* ¶ 4.

-1-

Thompson Coburn provides PHS legal services and, in connection with those legal services, PHS provided Thompson Coburn access to certain patient files. *Id.* ¶¶ 35, 4.

Between May 28-29, 2024, a criminal actor accessed Thompson Coburn's network systems, which contained personally identifiable information of certain individuals (the "Incident"). *Id.* ¶ 2. In November 2024, eight plaintiffs filed suit against Thompson Coburn and PHS in the Eastern District of Missouri. On January 21, 2025, this Court consolidated the cases and appointed interim class counsel for Plaintiffs. ECF No. 24. Plaintiffs then filed their Complaint on February 20, 2025. ECF No. 27. Plaintiffs seek to represent a nationwide putative class of "[a]ll natural persons residing in the United States whose Private Information was compromised as a result of the Data Breach." Compl. ¶ 268.

Plaintiffs allege they are patients or former patients of PHS who received notice of the Incident from Thompson Coburn. *Id.* ¶¶ 158-277. Instead of providing the notices they received, Plaintiffs cite the notice Thompson Coburn posted online about the Incident, which states that (1) "[t]he specific type of information at issue varies for each individual, and is specified in the letters that were mailed to the involved individuals" and (2) that "out of an abundance of caution," all those who received notice of the Incident "were offered access to credit monitoring and identity theft protection services, free of charge."[1]

Plaintiffs allege no facts about PHS's involvement in the Incident other than that PHS retained Thompson Coburn as its outside legal counsel, and in the course of that relationship Thompson Coburn accessed certain patient files. Compl. ¶¶ 35, 4. In an attempt to conjure up a claim against PHS, Plaintiffs speculate that PHS "has not implemented reasonable cybersecurity safeguards or policies" or "adequately supervised its IT or data security agents and employees,

---

[1] Compl. ¶¶ 39 n.8, 44 n.11, *Notice of Data Security Incident*, https://tcnotification.com/.

including Thompson [Coburn]." *Id.* ¶ 33.[2]  However, they allege no evidence to support that speculation.

Plaintiffs also make vague allegations about PHS's "privacy policy" and whether it might support some claim against PHS.  *Id.* ¶ 30 n.6.  However, only one Plaintiff, Mary Martinez, alleges she received any "privacy policy" as part of receiving medical treatment.  *Id.* ¶ 255.  More importantly, nothing about that "privacy policy" supports any claim.  The so-called "privacy policy" Plaintiffs refer to is PHS's "Joint Notice of Privacy Practices," which is a notice that is standard for all HIPAA-covered entities.[3]  The notice states PHS has a "training program" to educate its employees and others about PHS's privacy policies.  *See* Ex. A.  It also tells patients that PHS can share, without prior consent, health information with third parties for healthcare operations to "operate" and "deliver quality care and services," as well as for legal and administrative proceedings.  *See id.*  The notice also states that when a service involving a patient's health is performed by a third party, PHS requires "a written agreement with them."  *Id.*  Plaintiffs do not allege PHS did not provide a training program to its employees and others.  Plaintiffs do not allege PHS shared patient information with Thompson Coburn for reasons other than for healthcare operations or legal and administrative proceedings.  And Plaintiffs do not allege that PHS lacks a written agreement with Thompson Coburn.  In fact, Plaintiffs acknowledge that Thompson Coburn is a "business associate" of PHS.  Compl. ¶ 111.

---

[2] Plaintiffs identify different measures that unspecified "Defendants" could have implemented, such as "Strong Spam Filters," "Firewall Configuration," "Patch Management," "Application Whitelisting," "Secure Internet-Facing Assets," "Include IT Pros in security discussions," among other similar measures. *Id.* ¶¶ 57-58.  Plaintiffs, however, allege nothing more, such as why these measures are relevant to the Incident or that Thompson Coburn (or PHS) did not have these security features.

[3] Compl. ¶ 30 n.6; *see* Exhibit A, *Joint Notice of Privacy Practices*, https://onbaseext.phs.org/PEL/DisplayDocument?ContentID=wcmprod1029971 (the "Notice").

Although Plaintiffs concede Thompson Coburn (not PHS) was the only defendant whose network was "breached," and although they further concede that their information was taken, if at all, from Thompson Coburn (not PHS), *id.* ¶ 45, Plaintiffs seek from PHS compensation for the same purported injuries they lay at the feet of Thompson Coburn.  Thus, all Plaintiffs allege varying amounts of "lost time" for varying reasons and most Plaintiffs allege receiving increased spam.  *See, e.g.*, Compl. ¶¶ 164-65.  Two plaintiffs allege they received notifications about information found on the Dark Web, but they do not specify any details about those notifications (or even the date received).  *Id.* ¶¶ 177, 248.  One Plaintiff alleges that a "cybercriminal" attempted to purchase a laptop on her Amazon account, but she does not allege (and the notice of the Incident disclaims) any credit card information was involved in the Incident.  *Id.* ¶ 214.

## ARGUMENT

### I.    Plaintiffs' Pleading Burden

To survive a motion to dismiss for failure to state a viable claim pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that demonstrate a "plausible" basis for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Factual allegations that establish no "more than a sheer possibility" of liability are not sufficient.  *Id.*  In evaluating a motion to dismiss, courts may consider documents and other "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting 5B Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1357 (3d ed. 2004)).

## II.    Plaintiffs' Common Law Claims Should Be Dismissed Pursuant to Rule 12(b)(6)

### A.    Plaintiffs' Claims Require Dismissal Regardless of Whether Missouri or New Mexico Law Applies

Plaintiffs' claims potentially implicate the laws of Missouri, whose law Plaintiffs invoke, and New Mexico, which is Plaintiffs' home state and where PHS is located.  To determine which law governs Plaintiffs' claims, a federal court sitting in diversity applies the choice of law rules of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).[4] Courts, however, should and do avoid the choice of law analysis where the law of both jurisdictions results in the same outcome.  *Ronnoco Coffee, LLC v. Westfeldt Bros., Inc*., 939 F.3d 914, 920 (8th Cir. 2019); *Ferrell v. Allstate Ins. Co.*, 188 P.3d 1156, 1164 (N.M. 2008). Here, the Court need not determine which state's law applies because Plaintiffs' claims do not survive under either Missouri or New Mexico law for the reasons set forth below.

### B.    Plaintiffs' Claims All Lack Cognizable Injury and Damages

Plaintiffs' common law claims must be dismissed for the simple and dispositive reason that none of them allege a legally cognizable injury *at all*, much less as against PHS.  Each of the following of Plaintiffs' claims requires a showing of cognizable injury or damages: (1) negligence, (2) negligence *per se*, (3) breach of implied contract, and (4) breach of fiduciary duty of confidentiality.[5]

---

[4] Missouri applies the "most significant relationship" test from the Restatement (Second) of Conflict of Laws to determine which law governs each claim, which is presumptively "the state where the injury occurred."  *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994); *see also Mackey v. Belden, Inc.*, 2021 WL 3363174, at *2 (E.D. Mo. Aug. 3, 2021) (same).  New Mexico follows a similar approach under the Restatement (First) of Conflict of Laws and generally applies "*lex loci delictus*, or the law of the place of wrong, in tort actions."  *San Cristobal Acad., Inc. v. Transitional Living Corp.*, 2012 WL 6605992, at *6 (D.N.M. July 13, 2012).

[5] *Tafoya v. Seay Bros. Corp.*, 890 P.2d 803, 805 (N.M. 1995) (negligence); *Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. 2008) (negligence); *Schmidt v. ABF Freight Sys., Inc.*, 2019 WL 4820136, at *3 (D.N.M. Oct. 1, 2019) (negligence *per se*); *Lowdermilk v. Vescovo Bldg. & Realty Co.*, 91 S.W.3d 617, 628 (Mo. Ct. App. 2002) (negligence *per se*); *Hosp. Prods., Inc. v. Sterile Design, Inc*., 734 F. Supp. 896, 907 (E.D. Mo.) (breach of contract), *aff'd sub nom.*, 923 F.2d 859 (8th Cir. 1990); *Armijo v. Affilion, LLC*, 2020 WL

A court must dismiss a data breach class action where the plaintiffs "fail[] to adequately allege damages stemming from a data breach of [defendant] by third parties." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021) (affirming dismissal of data breach class action involving disclosure of "name, date of birth, social security number, driver's license number, and unidentified 'financial information'" for lack of damages).  Here, Plaintiffs allege a laundry list of injuries they claim to have suffered as a result of the Incident, including (1) lost time and opportunity costs, (2) increase in spam, (3) diminished value of PII, (4) loss of benefit of the bargain, and (5) the risk of future harm and fear and anxiety.  Compl. ¶¶ 295, 167.[6] In addition, one plaintiff, Paula Ortiz, alleges she was "notified" at an unspecified time that a cybercriminal *attempted* to purchase an Apple laptop on her Amazon.com account.  *Id.* ¶ 214.

But, in this data breach context, none of these claimed "injuries" are legally cognizable. This is not an issue of first impression—courts across the country have addressed the issue of whether these types of injuries are legally cognizable, with a resounding response of "no."[7]

---

2797685, at *4 (D.N.M. May 29, 2020) (breach of contract), *aff'd*, 854 F. App'x 236 (10th Cir. 2021); *Henry v. Farmers Ins. Co.*, 444 S.W.3d 471, 480 (Mo. Ct. App. 2014) (breach of fiduciary duty); *Horizon/CMS Healthcare Corp. v. Am. Cont'l Ins. Co.*, 2000 WL 36740002, at *4 (D.N.M. May 2, 2000) (breach of fiduciary duty).

[6] The Complaint also includes allegations regarding future cost of credit and identity theft (Compl. ¶¶ 153-56), yet no Plaintiff actually alleges that they purchased any credit or identity monitoring services. The same is true with a number of allegations.  For instance, each Plaintiff alleges an "invasion of privacy," yet no Plaintiff explains what this means, and there is no actual claim for invasion of privacy. *See, e.g.*, *id.* ¶ 166.  Similarly, each Plaintiff alleges the loss of the value of access to PII, but no Plaintiff explains what this means or why they lost access to any PII.  *Id.*  These naked "assertions devoid of further factual enhancement" are insufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

[7] Courts routinely "examine the reasoning of other courts" when addressing whether plaintiffs have alleged cognizable injury and damages in the data breach context.  *See, e.g.*, *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) (citing out-of-circuit caselaw and finding that plaintiffs did not allege cognizable damages).  The Eighth Circuit likewise turns to "analogous decisions" from other courts "[i]n the absence of any controlling Missouri Supreme Court authority."  *St. Paul Fire & Marine Ins. Co. v. Schrum*, 149 F.3d 878, 880 (8th Cir. 1998).

### 1.    Lost Time Is Not a Cognizable Injury

Each Plaintiff alleges generally they "lost time" addressing the Incident.  *See, e.g.*, Compl. ¶¶ 164, 166.  As the Eighth Circuit makes clear, the "time [plaintiff] spent protecting himself against the threat of future identity theft does not amount to an out-of-pocket loss."  *In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019).  As such, lost time "is not a cognizable injury sufficient to support the element of damages."  *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1233 (D. Nev. 2020); *see Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) (lost time is "too speculative to constitute cognizable injury").

### 2.    Increased Spam Emails and Calls Are Not Cognizable Injuries

Nearly half of Plaintiffs allege some form of increase in "spam" calls, emails, or text messages.[8]  But, any actual damages from an increase in spam requires *Plaintiffs themselves* to: (1) provide a bad actor additional personal information in response to the spam that then results in (2) the bad actor tricking a plaintiff into spending or losing money.  Not a single Plaintiff makes either of these allegations.  And, similar to lost time, an increase in spam alone does "not constitute an injury."  *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (finding no injury despite plaintiff receiving "target[ed]" physical, electronic, and telephonic "solicitations"); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("The receipt of spam by itself, however, does not constitute a sufficient injury entitling [plaintiff] to compensable relief.").  This is particularly so where—like here—Plaintiffs do not allege their email addresses or phone numbers were "not publicly available and therefore would have been difficult . . . to locate absent the assistance of the data thief."  *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015) (quoting *In re SAIC Backup Tape Data Theft*

---

[8] Heidi Mathiasen, M.R., D.L., and Kristen Cochrane do not allege an increase in spam.  The remaining Plaintiffs do.  *See* Compl. ¶¶ 165, 176, 189, 213, 261, 273.

*Litig.*, 45 F. Supp. 3d 14, 33 (D.D.C. 2014)) ("Plaintiff's allegation that he was injured when he received an increasing number of regular mail advertisements after the Data Breach targeting his medical conditions is not plausibly alleged as an injury fairly traceable to the Data Breach.").

### 3. Plaintiffs Do Not Allege Sufficient Facts to Support Their Diminished Value of PII Injury

Plaintiffs also claim diminished value of their PII as a result of the Incident. *See, e.g.*, Compl. ¶ 166.  But Plaintiffs fatally do not allege facts to support their claims.  Plaintiffs generally allege that certain sensitive PII can be sold for $363 and that consumers receive $50 for providing their web browsing history to Nielsen Corporation. *Id.* ¶¶ 143, 145.  That is it.  No Plaintiff alleges there is a market for their specific data.  And, critically, no Plaintiff alleges that they lost any opportunity to participate in this market and sell their data.  "[G]eneral allegations that a plaintiff's personal information has diminished in value are not enough." *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021).  "In order to survive a motion to dismiss on this theory of damages, a plaintiff 'must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market.'" *Pruchnicki*, 439 F. Supp. 3d at 1234 (quoting *Svenson v. Google, Inc.*, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016)); *see also Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *8 (S.D.N.Y. Mar. 23, 2021) ("[Diminished value of PII] allegations are actionable only if the plaintiff also alleges the existence of a market for that information and how the value of such information could have decreased due to its disclosure.").  Having made none of these specific allegations, Plaintiffs cannot claim any diminished value of their PII. *Pruchnicki*, 439 F. Supp. 3d at 1235 ("[T]here are no specific allegations that [P]laintiff[s] ha[ve] been unable to sell, profit from, or otherwise monetize [their] personal information.").

### 4.    Plaintiffs' Benefit of the Bargain Damages Are Not Cognizable

Plaintiffs all claim "loss of benefit of the bargain." *See, e.g.*, Compl. ¶ 166.  The Complaint includes one paragraph, on behalf of all purported class members and Plaintiffs, that "Plaintiffs . . . understood and expected that they were, in part, paying for the services and necessary data security . . . ." *Id.* ¶ 157.  As a result, Plaintiffs "received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Presbyterian." *Id.*  No Plaintiff, however, alleges they purchased anything from PHS.  The only allegation, repeated by all Plaintiffs, is that they are current or former patients of PHS.  But none of them allege what they purportedly paid PHS for any "services," or how much of what they paid went to data security as opposed to healthcare services they actually received from PHS.  Put simply, Plaintiffs, if they paid anything, paid for healthcare services and nothing more.

The Eighth Circuit has rejected these allegations as insufficient in this same context.  *See In re SuperValu*, 925 F.3d at 966 ("Because [Plaintiff] does not allege that any specific portion of his payment went toward data protection, he has not alleged a benefit conferred in exchange for protection of his personal information . . . .").[9]  Other courts agree.  *See, e.g., Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018) ("[Plaintiff] does not contend . . . the items she purchased [are] defective or that [Defendant] promised any particular level of security, for which she paid," so the benefit of the bargain "is not a loss"); *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13 (D.D.C. 2019), *on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021) (finding no cognizable harm on the benefit of the bargain theory where "some indeterminate amount of [plaintiffs'] health insurance premiums went towards providing data security"); *Irwin*

---

[9] Courts often discuss benefit of the bargain damages in the context of unjust enrichment claims.  *See, e.g., Anderson v. Bass Pro Outdoor World, LLC*, 355 F. Supp. 3d 830, 839 (W.D. Mo. 2018) ("[B]ecause the parties received the benefits they bargained for, there is no unjust enrichment.").

*v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) ("[Plaintiff] paid for food products. She did not pay for a side order of data security and protection").

Indeed, Plaintiffs do not allege PHS said the cost of data security was included in the cost of its healthcare services in any agreement or otherwise. *See Gardiner v. Walmart Inc.*, 2021 WL 4992539, at *5 (N.D. Cal. July 28, 2021) (no benefit of the bargain damages where the defendant's privacy policy "never discusse[d] product pricing or charges for data security"). Plaintiffs' theory is not viable absent "the presence of a security agreement concerning consumer data or some other representation that the cost of security is subsumed within the cost of goods." *Ables v. Brooks Bros. Grp.*, 2018 WL 8806667, at *7 (C.D. Cal. June 7, 2018).

### 5. Potential Future Harm and Emotional Distress Are Not Cognizable Injuries

Plaintiffs all claim "the continued and certainly increased risk of identity theft" as well as unspecified "fear, anxiety, and stress." *See, e.g.*, Compl. ¶¶ 166-67. Both of these claimed injuries, however, are not cognizable injuries as a matter of law.

*First*, "[a]lleged injuries that stem from the danger of future harm are insufficient to support" the prima facie damages elements of any of Plaintiffs' claims. *Pruchnicki*, 439 F. Supp. 3d at 1232. In fact, as made clear by the Eighth Circuit "[m]assive class action litigation should be based on more than allegations of worry and inconvenience." *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017). The Eighth Circuit's decisions in the *In re Supervalu* cases are instructive on this point. In the first *In re Supervalu* case, the Court considered whether the named plaintiffs suffered an injury-in-fact sufficient to confer standing. 870 F.3d 763, 769-770 (8th Cir. 2017). In finding that all but one had not, the Court warned that the mere possibility of a future injury without any allegations of the misuse of that data is insufficient for standing, let alone the "higher hurdles" of Rule 12(b)(6). *Id* at 773-74. The Court amplified this point in its

second decision, which reviewed the dismissal of the one remaining plaintiff's claims under Rule 12(b)(6). 925 F.3d at 959-60. Specifically, the Court, in upholding dismissal of that plaintiff's claims, held that none of his injuries "constitute actual damage" because they were purely speculative. *Id.* at 964. The Court made clear that "[a] purely speculative injury [] by definition . . . cannot constitute actual damage." *Id.* The same is true here. Plaintiffs' purported risk of future harm is a purely speculative injury that, by definition, cannot support actual injury.

*Second*, emotional distress, alone and without any physical manifestation or any associated economic loss, is not a cognizable injury under New Mexico law. *See Jones v. Schoellkopf*, 122 P.3d 844, 853 (N.M. Ct. App. 2005) (New Mexico only recognizes "extremely narrow circumstances for the award of emotional distress damages without evidence of other injury"). Similarly, under Missouri law, the emotional distress must be medically diagnosable and sufficiently severe to be medically significant. *Biersmith v. Curry Ass'n Mgmt.*, 359 S.W.3d 84, 89-90 (Mo. Ct. App. 2011). Plaintiffs' rote allegations of emotional distress fall far short of being medically diagnosable and medically significant. This is no surprise as other courts facing similar allegations in data breach cases like this one have come to the same conclusion. *See, e.g.*, *Pruchnicki*, 439 F. Supp. 3d at 1233-34; *Attias*, 365 F. Supp. 3d at 16-17.

### 6. Attempted Identity Theft or Fraud Is Not Cognizable

There is one Plaintiff, and one Plaintiff only (Paula Ortiz), who alleges that at an unspecified time a cybercriminal *attempted* to purchase an Apple laptop on her Amazon.com account. Compl. ¶ 214. The only connection between this attempt and the Incident is her allegation that she uses the same payment information that she "provided to Presbyterian (to pay for her appointments)." *Id.* As an initial matter, the Incident did not involve any Plaintiffs' payment information, such as credit card numbers. This is confirmed by the notice provided on Thompson Coburn's website, which does not list payment information as a potentially affected

data element.[10]  Moreover, even *if* the Incident involved payment information, which no Plaintiff alleges, that would not give a cybercriminal access to anyone's Amazon.com account, which is protected by a username and password.

But, regardless, as a matter of law, an *attempted* purchase of a computer is not a cognizable injury.  The law is clear that the "mere allegation[s] of an unauthorized charge, unaccompanied by an out-of-pocket loss, [are] not sufficient to state an actionable injury."  *In re SuperValu*, 2018 WL 1189327, at *11 (D. Minn. Mar. 7, 2018) *aff'd sub nom.* 925 F.3d 955 (8th Cir. 2019); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1281-83 (M.D. Fla. 2016) (finding that plaintiff who did not allege "charges went unreimbursed by his credit union" had "not alleged any monetary harm" from fraudulent charges); *Provost v. Aptos, Inc.*, 2018 WL 1465766, at *3 (N.D. Ga. Mar. 12, 2018) (no injury to plaintiff where she did not allege "she requested reimbursement from her bank or that she was denied such reimbursement").  Here, Ms. Ortiz does not even allege a charge, let alone an unreimbursed charge.  She only alleges an attempt at a purchase that did not go through or result in any charge or out-of-pocket loss.  As such, her allegation is not sufficient to show a cognizable injury for her claims.

## C.    Even if Plaintiffs Pled Cognizable Damages, Their Common Law Claims Against PHS Must Still Be Dismissed

Even if Plaintiffs were able to plead legally cognizable damages, their common law claims must still be dismissed for the following dispositive reasons.

---

[10] *Notice of Data Security Incident*, https://tcnotification.com/.  Although this Plaintiff, Paula Ortiz, did not include her notice letter, other Plaintiffs included them on their original complaints.  All of these state clearly that the unauthorized access "did **NOT** involve . . . financial or credit card account information." *See, e.g.*, ECF No. 1-1 (Salazar's Notice); *Madrid v. Thompson Coburn LLP et al*, No. 4:24-cv-01542-HEA, ECF No. 1-1 (Madrid's Notice); *Mathiasen v. Thompson Coburn LLP*, No. 4:24-cv-01522-HEA, ECF No. 1-1 (Mathiasen's Notice); *Tafoya v. Thompson Coburn, LLP et al*, No. 4:24-cv-01513-HEA, ECF No. 1-1 (Tafoya's Notice).

1.    **Plaintiffs' Negligence Claim Does Not Satisfy the Duty, Breach, and Causation Requirements**

Plaintiffs' negligence claim tries to hold PHS liable for the acts of a third-party criminal, a criminal who did not even access PHS's systems.  Fatally, Plaintiffs do not allege (1) PHS breached any alleged duty; (2) the breach proximately caused them harm; and (3) they incurred cognizable damages as a result of the breach.  *See Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 793 (Mo. banc 2016); *Herrera v. Quality Pontiac*, 73 P.3d 181, 186 (N.M. 2003).

*First*, as to duty, Plaintiffs allege that the Incident was the result of "sophisticated criminal activity."  Compl. ¶ 153.  The law, however, imposes no tort duty to protect Plaintiffs against the criminal conduct of a third party because, as a matter of law, criminal acts are unforeseeable.  *See, e.g.*, *Hollis ex rel. Hollis v. Poplar Bluff Reg. Med. Ctr.*, 674 S.W.3d 76, 86 (Mo. Ct. App. 2023) ("Missouri recognizes the general common law rule that there is no duty to protect someone from a third party's criminal act."); *Ciup v. Chevron U.S.A., Inc.*, 928 P.2d 263, 266 (N.M. 1996) (reaffirming the rule that "a person does not have a duty to protect another from harm caused by the criminal acts of third persons" except in limited circumstances).  This is especially true here when the criminal act was not even against PHS, but its law firm.

Trying to tie PHS to the Incident, Plaintiffs allege that unspecified "Defendants" knew or should have known that Plaintiffs were part of a foreseeable, high-risk group "that would suffer harm if their Private Information was not adequately protected."  Compl. ¶ 292.  But even assuming New Mexico and Missouri recognize this narrow exception and that it applies to the situation here, where the criminal attack happened to PHS's law firm, Plaintiffs do not allege any facts to support their conclusory allegation that *PHS* should have known Plaintiffs' PII was not

-13-

adequately protected. [11] Plaintiffs' allegations, in fact, point to the opposite conclusion. Plaintiffs allege Thompson Coburn represents that it uses "state-of-the-art technology" (Compl. ¶ 25) and is a "self-proclaimed expert in data privacy and security and handling highly sensitive aspects of its clients' business . . . [that] understood the need to protect its clients' patients' data and prioritize its data security." *Id.* ¶ 28. Plaintiffs provide *zero* allegations as to why PHS would not believe its data is safe in the hands of Thompson Coburn, which was acting as PHS's trusted legal adviser. As such, Plaintiffs have not shown an exception applies to the general rule that the law does not apply a tort duty against criminal actions.

*Second*, Plaintiffs' negligence claim does not plausibly allege that PHS *breached* any duty to Plaintiffs because the Incident impacted Thompson Coburn, not PHS. To the extent that Plaintiffs allege that PHS breached a duty by not vetting and supervising Thompson Coburn, they only offer "mere conclusory statements," *Iqbal*, 556 U.S. at 678, which are nothing more than "labels and conclusions," *Twombly*, 550 U.S. at 555. As discussed above, Plaintiffs themselves allege that Thompson Coburn "represents that it uses 'state-of-the art technology'" and is a "self-proclaimed expert in data privacy and security and handling highly sensitive aspects of its clients' business." Compl. ¶¶ 25, 28. And while Plaintiffs allege that PHS "fail[ed] to adequately vet Thompson's data security protocols and capabilities," *id.* ¶ 289, they do not offer any explanation for how PHS "failed" to vet Thompson Coburn. For instance, Plaintiffs, in a conclusory manner, state that PHS "has not implemented reasonable cybersecurity safeguards," *id.* ¶ 33, but they do not explain or identify what these apparent "reasonable

---

[11] To PHS's knowledge, neither the Missouri Supreme Court nor the New Mexico Supreme Court recognize a duty to safeguard information from a third party criminal. This Court is not permitted to create state law that does not exist. Rather, the correct outcome is to "choose the narrower and more reasonable path" of holding no general common-law duty exists "at least until the [state courts] tell[] us differently." *Pisciotta*, 499 F.3d at 635-36.

cybersecurity safeguards" should include.  This is a textbook example of a "mere conclusory statement" that does not satisfy the *Twombly/Iqbal* standard.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  As the Eighth Circuit explained in a similar analysis of breach of contract, claiming a defendant did not take "reasonable measures" to protect data is insufficient if it leaves the court left to "guess" in what ways the defendant did not take industry leading security measures.  *Kuhns*, 868 F.3d at 718.  Similarly, the naked assertion that because the "data was hacked" the defendant's protections "must have been inadequate" is the type of naked assertion that cannot survive a motion to dismiss.  *Id.* at 717-18.

*Third*, even if PHS breached a duty (it did not), Plaintiffs have not sufficiently alleged that the criminal actors gained access to Plaintiffs' PHI because of *PHS*.  In other words, Plaintiffs do not allege any "breach" committed by PHS was the proximate cause of the Incident and Plaintiffs' alleged damages.  Plaintiffs allege that "there is a close causal connection between Defendants' failure to implement security measures . . . and the harm, or risk of imminent harm, suffered by Plaintiffs and Class Members," Compl. ¶ 294, but Plaintiffs ignore the fact that the Incident impacted Thompson Coburn, not PHS.  Even if Plaintiffs had sufficiently alleged that PHS did not vet and monitor Thompson Coburn (they have not), they do not plead how those alleged actions proximately caused the Incident.  Plaintiffs' lack of specificity is dispositive because "the law does not impose strict liability for harms arising out of the storage of personal information."  *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *5 (S.D.N.Y. Feb. 24, 2022).  In other words, Plaintiffs must "plausibly allege not only that there was a data breach, but that the breach was caused by [PHS's] unreasonable conduct."  *In re Waste Mgmt.*, 2022 WL 561734, at *5; *see also Hummel v. Teijin Auto. Techs., Inc.*, 2023 WL 6149059, at *5 (E.D. Mich. Sept. 20, 2023) ("Were the court to make this inference, and find breach whenever a

cyberattack succeeded, this would, in effect, create strict liability in data breach cases."). Plaintiffs' inability to allege that the cyberattack on Thompson Coburn's systems was caused by PHS mandates that their negligence claim be dismissed.

### 2.    The FTC Act and HIPAA Are Not a Basis for Negligence *Per Se*

Plaintiffs assert a negligence *per se* claim—a theory that permits plaintiffs to establish duty and breach by proving that a defendant violated a statutory standard of conduct—based on violations of the FTC Act and HIPAA.  Compl. ¶¶ 299-301.  But alleged violations of the FTC Act and HIPAA cannot form the basis of a negligence *per se* claim because neither Act has a private right of action.  *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1225 (S.D. Fla. 2022) ("There is no private cause of action implied under the Federal Trade Commission Act. . . . Thus, violations of Section 5 cannot form the basis for a negligence per se claim."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 683 (D.S.C. 2021) ("Plaintiffs cannot base negligence per se claims on the HIPAA because it was 'enacted for the protection of the public and not with the protection of an individual private right' in mind.").  Missouri and New Mexico courts have dismissed negligence *per se* claims under the same circumstances.  *See Jasso v. Johnson & Johnson*, 2013 WL 12328873, at *6 (D.N.M. Dec. 4, 2013) ("[B]ecause a negligence per se action requires a violation of a statute, and neither the New Mexico statute at issue in this case nor the FDCA provide for a private cause of action, Plaintiffs have failed to assert a viable negligence per se claim."); *Alumbaugh v. Union Pac. R.R. Co.*, 322 F.3d 520, 524 (8th Cir. 2003) ("For a negligence *per se* claim to succeed, it must be shown that the legislature intended to create a private right of action in favor of the class of persons to which the plaintiff belongs for violation of the statute.").

**3.    Plaintiffs' Negligence and Negligence *Per Se* Claims Are Barred by the Economic Loss Doctrine**

Even if Plaintiffs' negligence and negligence *per se* claims did not suffer from the deficiencies discussed above, they are barred under the "economic loss doctrine."  Under Missouri and New Mexico law, the economic loss doctrine prohibits recovery in tort for "losses that are purely economic, i.e., not involving personal injury or property damage."  *U.S. ex rel. Custom Grading, Inc. v. Great Am. Ins. Co.*, 952 F. Supp. 2d 1259, 1269 (D.N.M. 2013); *see also Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010) ("The economic loss doctrine bars 'recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty.'" (quoting *Zoltek Corp. v. Structural Polymer Grp., Ltd.*, 2008 WL 4921611, at *3 (E.D. Mo. 2008), *aff'd sub nom.* 592 F.3d 893 (8th Cir.2010)).  To the extent Plaintiffs allege any cognizable damages, *see supra* Section II.B, they are economic losses.  *See* Compl. ¶ 295.

Courts routinely dismiss negligence and negligence *per se* claims under the economic loss doctrine in data breach cases where plaintiffs allege these same economic losses.[12]  *See, e.g., Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 762 (C.D. Ill. 2020) (dismissing negligence and negligence *per se* claims under Missouri's economic loss doctrine where the plaintiffs' "alleged damages do not include personal injury or property damage"); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 795 (W.D. Wis. 2019) (applying economic loss doctrine and holding that damages like lost time and loss in value of PHI are "economic damages because they reflect a pecuniary

---

[12] In *Mackey v. Belden, Inc.*, the court observed that "Missouri courts have adopted the economic loss doctrine," and that courts have applied it to data breach claims.  2021 WL 3363174, at *7.  The court, found it inapplicable to that particular case.  First, the court focused on the claim (not the damages), and decided it did not apply because plaintiff's negligence claim "is not contractual in nature." *Id.*  But, the proper analysis under the economic loss doctrine is on the losses alleged, not the cause of action.  And here, all of Plaintiffs' damages are economic in nature.  Second, the court applied a limited exception to the doctrine due to the special relationship between employees and employers. *Id.* at *8.  Here, Plaintiffs have not alleged, nor has this Court found, the same special relationship exists.

loss"); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1171 (D. Minn. 2014) ("Courts in five of [plaintiffs' home states]—California, Georgia, Illinois, Massachusetts, and Pennsylvania—have faced data-breach claims such as those here; all of these courts dismissed the negligence claims based on the economic loss rule."). The Court should do the same and dismiss Plaintiffs' negligence and negligence *per se* claims under the economic loss doctrine.

    **4. Plaintiffs' Breach of Implied Contract Claim Cannot Proceed Because They Have Not Alleged an Enforceable Contract Exists or that PHS Breached Any "Contract"**

   Plaintiffs do not plausibly allege the existence of any valid implied contract. An implied contract is "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred . . . from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Gould v. Wyse*, 2022 WL 980188, at *6 (D.N.M. Mar. 31, 2022) (internal citation omitted); *see also Nickel v. Stephens Coll.*, 480 S.W.3d 390, 397 n.6 (Mo. Ct. App. 2015) ("Missouri law requires that for an implied in fact contract to exist, there must be a meeting of the minds on essential terms.").

    "Plaintiffs here do not plead any company-specific documents or policies from which one could infer an implied contractual duty to protect Plaintiffs' information." *Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 663 (3d Cir. 2016). Plaintiffs generally allege that they entered into implied contracts with PHS by providing their PII. Compl. ¶ 311. But courts have consistently rejected this argument in the data breach context where Plaintiffs do not allege that "Defendants tacitly agreed to secure [their] personal data in exchange for renumeration." *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017); *Longenecker-Wells*, 658 F. App'x at 662-63; *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (affirming dismissal of breach of implied contract claim because "Plaintiffs–Appellants assert that they accepted a specific offer to encrypt and otherwise

safeguard their personal data even though the documents include no such terms and only generally discuss access to confidential information.").

In fact, the only document that Plaintiffs cite to in their Complaint is PHS's Notice. But, as described above, this Notice is required by HIPAA, *see* 45 C.F.R. § 164.520(b), and cannot "serve as an enforceable contract without a separate 'meeting of the minds' between the parties." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1092 (W.D. Wash. 2024). The Notice serves "to inform patients of their rights under federal law and the duties imposed on healthcare providers by these statutory provisions" and is not "contractual in nature." *Id.* "Because [healthcare providers] are required by law to adhere to HIPAA without receiving any consideration from the Plaintiff or any other patient, these provisions cannot create contractual obligations." *Brush*, 238 F. Supp. 3d at 1367; *see also Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556, at *10 (S.D. Iowa June 26, 2024) (dismissing breach of contract claims because defendant's Privacy Policy "promising to comply with HIPAA . . . is not enough to state a plausible claim for relief, as breach of contract claims generally cannot arise out of statutory obligations."); *Mednax*, 603 F. Supp. 3d at 1222 ("Because Defendants are required by law to adhere to HIPAA without receiving any consideration from Plaintiffs or any other patient, these provisions cannot create contractual obligations."). Nine of the ten Plaintiffs do not allege receiving the Notice. And the only Plaintiff who alleges receiving the Notice does not allege she read it, agreed to it, or any other facts demonstrating a meeting of the minds. Compl. ¶ 255.

Regardless, Plaintiffs leave the Court guessing why they think PHS breached any implied contract. The Eighth Circuit has made clear that these types of conclusory allegations are insufficient to allege breach. *See Kuhns*, 868 F.3d at 717-18 (dismissing breach of contract and

breach of implied contract because plaintiffs, like here, do not explain why there was a breach of any privacy agreement other than because the "data was hacked").

### 5. PHS Was Not Unjustly Enriched Because Plaintiffs Received the Healthcare Services They Paid For

To state a claim for unjust enrichment, Plaintiffs must plead (1) that a benefit was conferred on defendant, (2) that defendant accepted the benefit, and (3) that it is inequitable and/or unjust to allow defendant to retain the benefit. *Blair v. City of Hannibal*, 179 F. Supp. 3d 901, 911 (E.D. Mo. 2016); *City of Rio Rancho v. Amrep Sw. Inc.*, 260 P.3d 414, 428-29 (N.M. 2011). Plaintiffs also must show that they did not receive what they paid for. *See Hennessey v. Gap, Inc.*, 86 F.4th 823, 831 (8th Cir. 2023) ("[T]here can be no unjust enrichment if the parties receive what they intended to obtain.") (quoting *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. 2010)). Plaintiffs' unjust enrichment claim should be dismissed for three reasons.

*First*, Plaintiffs have not alleged that they conferred a benefit on PHS. While Plaintiffs allege that they "conferred a monetary benefit on Presbyterian" by providing it "their Private Information," Compl. ¶ 328, this argument goes nowhere because "[c]ourts have . . . routinely rejected the 'proposition that an individual's personal identifying information has an independent monetary value.'" *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022). And because Plaintiffs do not allege "that any specific portion of [their] payment went toward data protection, [they] ha[ve] not alleged a benefit conferred in exchange for protection of [their] personal information nor ha[ve] [they] shown how [PHS's] retention of [their] payment would be inequitable." *In re SuperValu*, 925 F.3d at 966.

*Second*, Plaintiffs received exactly what they paid for, and it is not unjust for PHS to retain any benefits. Plaintiffs allege they "conferred a monetary benefit on Presbyterian" because "they paid Presbyterian and/or its agents for the provision of services . . . ." Compl.

¶ 328.  But Plaintiffs *received* healthcare services.  Courts dismiss unjust enrichment claims in these circumstances.  *See, e.g.*, *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *3 (M.D.N.C. Aug. 24, 2023) ("There is no allegation the plaintiffs did not receive the medical care they expected in return, and they have not made out a claim of unjust enrichment."); *Orthman v. Premiere Pediatrics, PLLC*, 545 P.3d 124, 136 (Okla. Civ. App. 2024) (affirming dismissal where "Plaintiffs paid for medical services — not data privacy services — and [defendant] did not receive any direct benefit from Plaintiffs toward data privacy services.").

*Third*, Plaintiffs' unjust enrichment claim must be dismissed because they have an adequate remedy at law.  Plaintiffs' other claims for money damages provide adequate remedies at law and Plaintiffs do not plead otherwise.  *See Amalaco, LLC v. Butero*, 593 S.W.3d 647, 653 (Mo. Ct. App. 2019) (affirming dismissal of unjust enrichment claim where plaintiff had "an adequate remedy at law"); *In re Santa Fe Nat. Tobacco Co.*, 288 F. Supp. 3d 1087, 1193 (D.N.M. 2017) ("Equitable claims are not available if there is an adequate remedy at law.").[13]

### 6.    PHS Did Not Affirmatively Disclose Plaintiffs' PII to Criminals, and Plaintiffs Waived the Fiduciary Duty of Confidentiality with Respect to PHS's Sharing of Information with Thompson Coburn

Plaintiffs claim PHS breached its fiduciary duty of confidentiality by "disclosing Plaintiffs . . . PHI and PII to unauthorized third-parties."  Compl. ¶ 359.  While Plaintiffs do not specify whether PHS's alleged "unauthorized" disclosure was to Thompson Coburn or to the criminal hackers, Plaintiffs do not state a claim under either circumstance.

*First*, Missouri courts have only recognized a breach of the fiduciary duty of confidentiality when an individual health provider itself disclosed information.  *See Brandt v.*

---

[13] Plaintiffs' unjust enrichment claim is pled "as an alternative to the breach of implied contract claim."  Compl. ¶ 327.  If the Court finds there is an implied contract (it should not, *see supra* Section II.C.4), it should dismiss the unjust enrichment claim.  *See Butero*, 593 S.W.3d at 653.

*Med. Def. Assocs.*, 856 S.W.2d 667, 670 (Mo. 1993) (physician testifying in malpractice action); *Inghram v. Mut. of Omaha Ins. Co.*, 170 F. Supp. 2d 907, 911 (W.D. Mo. 2001) (insurance company disclosing a policyholder's medical records in response to a subpoena).[14]  Missouri courts have not recognized a breach of fiduciary duty when one party is victimized by a third-party criminal data breach.  Plaintiffs do not claim that PHS or Thompson Coburn intentionally disclosed confidential information but instead allege that "a cyber-criminal viewed or took information stored within Thompson's systems."  Compl. ¶ 38.  Because neither PHS nor Thompson Coburn intentionally disclosed Plaintiffs' information, this claim should be dismissed. *See In re Brinker Data Incident Litig.*, 2020 WL 691848, at *22 (M.D. Fla. Jan. 27, 2020) (dismissing similar breach of confidence claim when defendant "did not do any act that made Plaintiffs' information known—the information was stolen by third-parties").

    *Second*, to the extent that Plaintiffs allege that PHS breached this duty by providing information to Thompson Coburn, their claim should still be dismissed because PHS disclosed to Plaintiffs that it may share health information with third parties, without prior consent, for healthcare operations, to "operate" and "deliver quality care and services," as well as for legal and administrative proceedings.  Ex. A.  Thus, Plaintiffs have waived the fiduciary duty of confidentiality.  *See Brandt*, 856 S.W.2d at 675 (affirming dismissal of fiduciary duty of confidentiality claim after finding that plaintiffs waived the claim).

## III.    The Court Should Dismiss Plaintiffs' MMPA Claim

    Plaintiffs' statutory claim under Missouri's Merchandising Practices Act ("MMPA") claim does not apply to PHS because PHS's alleged "unfair practices" are rooted in its actions in New Mexico.  Even if it did apply, Plaintiffs have not alleged that they suffered any loss in

---

[14] Plaintiffs specifically bring this claim "pursuant to Missouri common law."  Compl. ¶ 357.

relation to their purchase of healthcare services from PHS, or that they suffered any ascertainable loss of money or property, which are required elements of this claim under Missouri law.

### A.    The MMPA Does Not Apply Here

Plaintiffs' MMPA claim against PHS stumbles right out of the gate because the MMPA does not apply "where transactions took place outside of Missouri." *Barker v. Nestle Purina PetCare Co.*, 601 F. Supp. 3d 464, 469 (E.D. Mo. 2022). Here, Plaintiffs allege that PHS "[has] used and/or continues to use unfair practices . . . in connection with the advertising, marketing, and offering for sale of services *associated with healthcare services*." Compl. ¶ 372 (emphasis added). Plaintiffs are all New Mexico residents who received healthcare services in New Mexico where PHS is located. *Id.* ¶¶ 13-22. Thus, as against PHS, "Plaintiff does not allege an unlawful practice in connection with a sale or advertisement of any merchandise in or from Missouri." *Barker*, 601 F. Supp. 3d at 469. This Court and the Eighth Circuit have dismissed MMPA claims under precisely these circumstances. *See id.* (dismissing MMPA claim where plaintiff, a resident of Georgia, purchased the product at issue in Georgia); *Perras v. H & R Block*, 789 F.3d 914, 918 (8th Cir. 2015) (holding the MMPA did not apply where transaction took place outside of Missouri); *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 404 (8th Cir. 2019).

### B.    Plaintiffs Do Not Allege Loss in Relation to a Sale of "Merchandise"

Even if Plaintiffs survive the gating issue, they do not allege a claim under the MMPA. Under the MMPA, a plaintiff "must prove that (1) he leased or purchased a product or service; (2) primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by Mo. Rev. Stat. § 407.020." *Newman v. Terminix Int'l, Inc.*, 2019 WL 8014408, at *2 (E.D. Mo. Mar. 26, 2019). Additionally, "the alleged unlawful act must occur in relation to a sale of merchandise." *Kuhns*, 868 F.3d at 719. While Plaintiffs are correct that "merchandise" "include[s] the providing of

'services,'" Compl. ¶ 368, they do not allege any of them purchased services from PHS (or when).  For this reason alone, Plaintiffs' MMPA claim should be dismissed.

Regardless, even if they had alleged they purchased services from PHS, their MMPA claim should still be dismissed because they have not, and cannot, demonstrate that their "loss was in relation to [their] purchase" of these healthcare services.  *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1057 (E.D. Mo. 2009).  This is because PHS "sold healthcare services and not data security services. Any data security it provided to Plaintiffs was merely incidental—not in relation—to what it actually sold them."  *Mednax*, 603 F. Supp. 3d at 1215.  Courts routinely dismiss MMPA claims in the data breach context where plaintiffs do not allege that their loss was in relation to their sale of "merchandise."  *See Amburgy*, 671 F. Supp. 2d at 1057; *Kuhns*, 868 F.3d at 719 ("While intangible services may qualify as merchandise, [defendant] did not sell data security services; it put data security measures in place to induce customers to voluntarily transfer their PII to [defendant] to obtain its brokerage services.").

### C.    Plaintiffs Do Not Allege an Ascertainable Loss of Money or Property

Finally, Plaintiffs' MMPA claim still must be dismissed because they cannot allege "[a]n ascertainable loss of money or property," which is "an essential element of a cause of action brought under the MMPA."  *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014).  To determine whether a plaintiff has suffered an ascertainable loss under the MMPA, Missouri courts apply the "benefit of the bargain" rule, which "awards a prevailing party the difference between the value of the product as represented and the actual value of the product as received."  *Id.*  But because Plaintiffs do not allege they paid any money for privacy safeguards, *see supra* section II.C.5, their MMPA claim should be dismissed.  *See Amburgy*, 671 F. Supp. 2d at 1057–58 (dismissing claim that "defendant's failure to employ adequate security measures coupled with its false promises to protect confidential information constituted unlawful

and/or unfair practices under the MMPA" because plaintiff "fails to plead [they] paid anything of value for the purchase or lease of merchandise").

## IV.    Plaintiffs' Declaratory Judgment Claim is Not a Standalone Cause of Action

Plaintiffs' declaratory judgment claim should be dismissed because it is not a standalone cause of action, but rather a remedy.  The Declaratory Judgment Act ("DJA") "is strictly remedial in nature."  *OS33 v. CenturyLink Commc'ns, L.L.C.*, 2018 WL 2267910 (E.D. Mo. May 17, 2018); *Fam. Dollar Stores of Missouri, LLC v. Tsai's Inv., Inc.*, 2022 WL 355109, at *8 (E.D. Mo. Feb. 7, 2022) (a declaratory judgment "acts as a remedy, not a separate cause of action"); *Rehkemper & Sons, Inc. v. Mid-Rivers Dev. and Constr. LLC*,  2021 WL 6072496, at *3 (E.D. Mo. Dec. 23, 2021) (noting the DJA "acts as a remedy and not a claim").  New Mexico courts agree that the DJA is "procedural only" and "does not create an independent cause of action."  *Winter v. New Mexico Dept. of Workforce Sols.*, 2022 WL 4132740, at *10 (D.N.M. Sept. 12, 2022).  Under Missouri and New Mexico law, Plaintiffs' declaratory judgment claim should be dismissed.

Plaintiffs' declaratory judgment claim should also be dismissed as wholly duplicative of Plaintiffs' breach of contract claim (to the extent the claim survives).  Missouri courts routinely dismiss declaratory judgment claims when they are "duplicative of breach of contract claims."  *Reeves v. 21st Cent. Centennial Ins. Co.*, 2022 WL 2209412, at *3 (E.D. Mo. June 21, 2022); *LONG Pharm. Corp. v. Express Scripts, Inc.*, 747 F. Supp. 3d 1203, 1208 (E.D. Mo. 2024).

## CONCLUSION

For the foregoing reasons, PHS respectfully requests that the Court dismiss Plaintiffs' Consolidated Class Action Complaint with prejudice as to all claims against PHS.

Dated: March 24, 2025

Respectfully Submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

/s/ *Christopher Nease*
Christopher Nease (MO Bar No. 57327)
700 Louisiana Street
Suite 4000
Houston, TX 77002
Tel: 713.576.2400
Fax: 713.576.2499
chris.nease@arnoldporter.com

Kenneth L. Chernof (*pro hac vice*)
601 Massachusetts Ave, NW
Washington, DC 20001
Tel: 202.942.5000
Fax: 202.942.5999
ken.chernof@arnoldporter.com

Daniel E. Raymond (*pro hac vice*)
70 West Madison Street
Suite 4200
Chicago, IL 60602
Tel: 312.583.2300
Fax: 312.583.2360
daniel.raymond@arnoldporter.com

*Counsel for Defendant Presbyterian Healthcare Services*