# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: THOMPSON COBURN DATA SECURITY LITIGATION<br><br>This Document Relates To: All Matters | Master Case No. 4:24-cv-1509 |

## MEMORANDUM IN SUPPORT OF THOMPSON COBURN LLP's
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

GORDON REES SCULLY MANSUKHANI, LLP

Jason Winslow (MO Bar No. #60710)
Justin M. Holmes (*pro hac vice forthcoming*)
Brian E. Middlebrook (*pro hac vice forthcoming*)
Alexandra Mormile (*pro hac vice* forthcoming)
211 North Broadway
Suite 2150
St. Louis MO 63102
(314) 797-7703
jwinslow@grsm.com
jholmes@grsm.com
amormile@grsm.com

*Attorneys for Thompson Coburn LLP*

i

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................ 3

III. ARGUMENT ...................................................................................................... 4

    A.   Plaintiffs' Failure to Plead Facts That Could Possibly Establish Legally Cognizable Damages or Causation Requires Dismissal Of the Negligence Cause of Action, as well as All Other Counts of the Complaint. ......................... 5

        1.   None of the "Harms" Alleged by Plaintiffs Constitute Cognizable Damages Necessary for their Negligence Claim to Survive, as Well as Their Other Causes of Action. ............................................................... 5

        2.   The Complaint Does Not Plausibly Allege Causation Essential for the Negligence Claim to Survive. ................................................................ 9

    B.   Plaintiffs' Negligence *Per Se* Claim Fails Because There is No Private Right of Action under HIPAA or the FTC Act (Count II) ................................................ 12

    C.   Plaintiffs Have Not Established the Existence of a Contract Created for the Benefit of the Plaintiffs, Requiring Dismissal of the Third Party Beneficiary Claim (Count V) ................................................................................................ 13

    D.   Plaintiffs Have Failed to Plead a Claim for Unjust Enrichment (Count VI) ........ 14

    E.   There is No Fiduciary Relationship Between Thompson Coburn and Plaintiffs Making the Breach of Fiduciary Duty of Confidentiality Claim Invalid (Count VII). ................................................................................... 16

    F.   Plaintiffs' Cannot Avail Themselves of the Missouri Merchandising Practices Act ("MMPA"), and the Claim Fails as a Matter of Law (Count VIII) ................................................................................................ 18

    G.   Plaintiffs' Claim for Declaratory Judgment Should be Dismissed as Duplicative of Plaintiffs' Other Claims (Count IX). ........................................... 20

IV.  CONCLUSION ................................................................................................ 22

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.G. Edwards & Sons, Inc. v. Drew*,
    978 S.W.2d 386 (Mo. Ct. App. 1998) ........................................................................ 17

*Amburgy v. Express Scripts, Inc.*,
    671 F. Supp. 2d 1046 (E.D. Mo. 2009) ................................................................ 19, 20

*Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*,
    No. 4:06-CV-1308 (CEJ), 2007 WL 2811089 (E.D. Mo. Sept. 24, 2007) ............... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 5

*Baldwin v. National Western Life Ins. Co.*,
    2021 WL 4206736 (W.D. Mo 2021) ................................................................... 6, 7, 9

*Barbara Reynolds Burger, et. al v. Healthcare Mgmt. Solutions, LLC et. al*,
    2024 WL 473735 (D. Md. Feb. 7, 2024) ..................................................................... 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 4, 5

*Biersmith v. Curry Ass'n Mgmt., Inc.*,
    359 S.W.3d 84 (Mo. Ct. App. 2011) ........................................................................... 7

*Burton v. MAPCO Express, Inc.*,
    47 F. Supp. 3d 1279 (N.D. Ala. 2014) ........................................................................ 8

*Carlsen v. GameStop, Inc.*,
    833 F.3d 903 (8th Cir. 2016) ..................................................................................... 15

*Cooper v. Bonobos, Inc.*,
    2022 WL 170622 (S.D.N.Y., 2022) ............................................................................. 7

*Couzens v. Donohue*,
    854 F.3d 508 (8th Cir. 2017) ....................................................................................... 7

*Dodd v. Jones*,
    623 F.3d 563 (8th Cir. 2010) ..................................................................................... 12

*Fam. Dollar Stores of Missouri, LLC v. Tsai's Inv., Inc.*,
    No. 4:21-CV-572-SRW, 2022 WL 355109 (E.D. Mo. Feb. 7, 2022) ....................... 20

*FTC v. Johnson*,
    800 F.3d 448 (8th Cir. 2015) ..................................................................................... 12

*Green v. eBay Inc.*,
    2015 WL 2066531 (E.D. La. May 4, 2015) ................................................................ 9

*Griffey v. Magellan Health Inc.*,
    562 F. Supp. 3d 34 (D. Ariz. 2021) ......................................................................... 6

*Hall v. Centerspace, Inc.*
    2023 WL 3435100 (D. Minn., May 12, 2023) ......................................................... 21

*Hall v. Emerson Electric Company*,
    942 F.3d 401 (8th Cir. 2019) ................................................................................ 19

*Harris v. Mercy Health Network, Inc.*,
    No. 4:23-CV-00195-SHL-SBJ, 2024 WL 5055556 (S.D. Iowa June 26, 2024) .................... 18

*Hertz Corp. v. RAKS Hospitality, Inc.*,
    196 S.W.3d 536 (Mo. Ct. App. 2006) ..................................................................... 15

*Howard v. Turnball*,
    316 S.W.3d 431 (Mo. Ct. App. 2010) ..................................................................... 16

*In re Barnes & Noble Pin Pad Litig.*,
    2013 WL 4759588 (N.D. Ill. Sept. 3, 2013) ............................................................. 8

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
    567 F. Supp. 3d 667 (D.S.C. 2021) ....................................................................... 15

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
    749 F. Supp. 3d 1240 (S.D. Fla. 2024) ............................................................. 14, 20

*In Re Mednax Services, Inc., Customer Data Security Breach*,
    603 F.Supp.3d 1183 (S.D. Fla. 2022) ..................................................................... 20

*In re SuperValu, Inc.*,
    925 F.3d 955 (8th Cir. 2019) ......................................................................... passim

*Jackson v. Charlie's Chevrolet, Inc.*,
    664 S.W.2d 675 (Mo. Ct. App. 1984) ..................................................................... 19

*Jurgens v. Build.com, Inc.*,
    No. 4:17-CV-00783-AGF, 2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) .......................... 15

*K.A. by & Through B.W. v. Children's Mercy Hosp.*,
    No. 4:18-00514-CV-RK, 2019 WL 2144815 (W.D. Mo. May 16, 2019) ........................... 19

*Koehler v. New American Funding*,
    2024 WL 3338782 (E.D. Mo. Jul. 9, 2024) ............................................................. 12

*Krefting v. Kaye-Smith Enterprises Inc.*,
    No. 2:23-CV-220, 2023 WL 4846850 (W.D. Wash. July 28, 2023) ................................. 14

iii

*Kuhns v. Scottrade, Inc.*
    868 F.3d 711 (8th Cir. 2017) ............................................................................... passim

*Liau v. Weee! Inc.*,
    2024 WL 729259 (S.D.N.Y. Feb. 22, 2024)............................................................. 7

*Linman v. Marten Transp., Ltd.*,
    No. 22-CV-204-JDP, 2023 WL 2562712 (W.D. Wis. Mar. 17, 2023)................................. 15

*Mackey v. Belden, Inc.*,
    No. 4:21-CV-00149-JAR, 2021 WL 3363174 (E.D. Mo. Aug. 3, 2021) .................. 17, 18, 21

*Masterson v. IMA Financial Group, Inc.*
    2023 WL 8647157 (D. Kan. Dec. 14, 2023)........................................................... 9

*McCombs v. Delta Grp. Elecs., Inc.*,
    2023 WL 3934666 (D.N.M. June 9, 2023) ............................................................ 7

*Miller v. Redwood Toxicology Lab'y, Inc.*,
    *688 F.3d 928 (8th Cir. 2012)* ............................................................................ 11

*Morningstar, LLC v. Hardee's Food Sys., Inc.*,
    No. 4:08CV794, 2009 WL 36406 (E.D. Mo. Jan. 6, 2009).................................... 21

*Newton v. Compass Health Network*,
    2022 WL 11545522 (E.D. Mo. Apr. 19, 2022)....................................................... 12

*Nitro Distributing, Inc. v. Dunn*,
    194 S.W.3d 339 (Mo. banc 2006)........................................................................ 13

*Owen-Brooks v. DISH Network Corp.*,
    No. 1:23-CV-01168-RMR-SBP, 2024 WL 4338133 (D. Colo. Aug. 23, 2024) .................... 8

*Perdue v. Hy-Vee, Inc.*,
    455 F. Supp. 3d 749 (C.D. Ill. 2020) .................................................................. 14

*Perras v. H&R Block*,
    789 F.3d 914 (8th Cir. 2015) ............................................................................ 18

*Pruchnicki v. Envision Healthcare Corp.*,
    439 F. Supp. 3d 1226 (D. Nev. 2020), a*ff'd*, 845 F. App'x 613 (9th Cir. 2021) ................... 6

*Roberts v. Hays*,
    No. 4:18-CV-445-DDN, 2018 WL 3861342 (E.D. Mo. Aug. 14, 2018)................................. 5

*Rodriguez v. Mena Hospital Commission*,
    2023 WL 7198441 (W.D. Ark., Nov. 1, 2023)...................................................... 18

*Sahm v. Avco Corporation*,
    No. 4:23- CV-00200-AGF, 2023 WL 4350950 (E.D. Mo. July 5, 2023)........................... 4, 5

iv

*State ex rel. William Ranni Assoc., Inc. v. Hartenbach*,
    742 S.W.2d 134 (Mo. banc 1987) ........................................................................ 13

*Stephens v. Availity LLC*,
    2019 WL 13041330, at *6 (M.D. Fla., Oct. 1, 2019) ........................................... 15

*Thornburg v. Fed. Express Corp.*,
    62 S.W.3d 421 (Mo. Ct. App. 2001) ..................................................................... 7

*Topchian v. JPMorgan Chase Bank, N.A.*,
    760 F.3d 843 (8th Cir. 2014) ......................................................................... 5, 14

*Toretto v. Donnelley Fin. Sols., Inc.*,
    583 F. Supp. 3d 570 (S.D.N.Y. 2022) ................................................................. 14

*Verni v. Cleveland Chiropractic Coll.*,
    212 S.W.3d 150 (Mo. 2007) ................................................................................ 13

*Webb v. Injured Workers Pharmacy, LLC*,
    2023 WL 5938606 (D. Mass. Sept. 12, 2023) ..................................................... 15

*Whalen v. Michael Stores, Inc.*,
    153 F.Supp.3d 577 (E.D.N.Y. 2015), *appeal filed*, No. 16–352 (2d Cir. Feb. 5,
    2016) ...................................................................................................................... 8

*Williams v. Bienville Orthopaedic Specialists*,
    LLC, 737 F. Supp. 3d 411 (S.D. Miss. 2024), *appeal dismissed sub nom.*
    *Williams v. Bienville Orthopaedic Specialists, L.L.C.*, No. 24-60365, 2024
    WL 5330715 (5th Cir. Sept. 6, 2024) ................................................................... 8

*Willis v. Buckner*,
    No. 4:09CV1108 CDP, 2009 WL 2382771 (E.D. Mo. July 31, 2009) .................. 4

*Ziglin v. Players MH L.P.*,
    36 S.W.3d 786 (Mo. Ct. App. 2001) ................................................................... 19

*Zygler v. Hawkins Constr.*,
    609 S.W.3d 61 (Mo. Ct. App. 2020) .................................................................... 13

## Statutes

15 U.S.C. § 45 ............................................................................................................ 12

Mo. Rev. Stat. § 407.025(1) ................................................................................ 18, 19

## Rules

Fed. R. Civ. P. § 12(b)(6) ................................................................................. passim

Fed. R. Civ. P. § 8 ........................................................................................................ 1

## I.    INTRODUCTION

The Court should dismiss this putative class action in its entirety under Fed. R. Civ. P. 12(b)(6) because Plaintiffs do not plausibly allege facts that support their claims that the May 2024 criminal intrusion into Thompson Coburn's computer systems proximately caused them legally cognizable harm. Although the Consolidated Class Action Complaint ("Complaint") spans more than 90 pages and includes 381 individual paragraphs, conspicuously absent are *any* factual allegations establishing that any one of the ten individual Plaintiffs suffered identity theft, fraud, or any other actual, concrete, and non-speculative injuries or damage as a result of their information being compromised in the cyberattack. Plaintiffs instead rest their litany of state law theories on generic, speculative, and conclusory allegations of causation and injury that do not plausibly identify the cyberattack as the cause of any legally cognizable damages.  Courts across the country, including the Eighth Circuit, have routinely rejected such general allegations and dismissed such theories of relief in data breach cases. In short, and as Gertrude Stein famously said, "there is no 'there' there." Plaintiffs have not been injured as a result of the cyberattack and therefore cannot maintain claims against Thompson Coburn (or its client, Presbyterian Health Services ("PHS")).

Plaintiffs' causes of action suffer from a number of other independent fatal defects beyond the lack of causation and injury. Indeed, the Complaint is replete with conclusory allegations that fail to meet the pleading standard in Fed. R. Civ. P. 8. These deficiencies are discussed in detail below and summarized as follows:

- Plaintiffs fail to plausibly allege facts that demonstrate causation and legally cognizable damages, as is required to establish an actionable claim as to each of Plaintiffs' claims for relief, including their claim for negligence (Count I).

- Plaintiffs' negligence *per se* claim (Count II) fails as a matter of law because the statutes invoked do not create any private right of action or otherwise support a negligence *per se* claim.

- Plaintiffs' breach of third-party beneficiary contract claim (Count V) fails because Plaintiffs fail to plausibly allege that any legal services agreement between PHS and Thompson Coburn was expressly made to benefit Plaintiffs.

- Plaintiffs fail to adequately plead unjust enrichment (Count VI) because Plaintiffs have no direct relationship with Thompson Coburn and therefore did not confer a benefit on Thompson Coburn by paying Thompson Coburn for data security or by having their information transferred to Thompson Coburn by PHS.

- Plaintiffs' breach of fiduciary duty claim (Count VII) fails as a matter of law because they (i.e., patients of PHS) have no relationship with Thompson Coburn, much less one that qualifies as "fiduciary" under Missouri law.

- Plaintiffs' Missouri Merchandizing Practices Act ("MMPA") claim (Count VIII) fails because Plaintiffs are not Missouri residents and did not purchase or lease any good or services (i.e., merchandise) from Thompson Coburn in Missouri or otherwise.

- Plaintiffs' declaratory judgment claim (Count IX) is improper and should be dismissed because it simply restates Plaintiffs' other causes of action.[1]

For these reasons, discussed more fully below, Plaintiffs' Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(6) with prejudice. Dismissal would be consistent with *Kuhns v. Scottrade, Inc.* 868 F.3d 711 (8th Cir. 2017) and *In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019), where the Eighth Circuit affirmed dismissal under Fed. R. Civ. P. 12(b)(6) of very similar state law claims brought by individuals whose personal information was allegedly compromised in data breaches. The key takeaway from *Kuhns* and *SuperValu* is that, at least in the Eighth Circuit, Plaintiffs must do more than merely allege their information was compromised in a data breach to state a cognizable claim for relief against Thompson Coburn or PHS.

---

[1] Counts III and IV of the Complaint are not directed toward Thompson Coburn and therefore not addressed herein.

## II.    STATEMENT OF FACTS

Thompson Coburn is a nationally recognized law firm headquartered in St. Louis. *See* Complaint (ECF No. 27) ("Compl.") ¶ 3. PHS provided Thompson Coburn with certain information and data in connection with Thompson Coburn's legal services for PHS. *Id.* ¶ 4. Plaintiffs allege that the data PHS provided to Thompson Coburn included their personally identifiable information ("PII") and protected health information ("PHI") (collectively "Protected Information") that they provided to PHS when obtaining medical services from it. *Id.* ¶ 5, 34-35.

On May 29, 2024, Thompson Coburn identified suspicious activity within its network (the "Incident"). *See id.* ¶ 39, n. 8. After Thompson Coburn secured its network, it investigated the Incident and provided notice of the Incident to federal law enforcement. *Id.* Thompson Coburn's investigation determined that between May 28 and 29, 2024, an unauthorized actor gained access to certain files containing information belonging to PHS patients. *Id.* Thompson Coburn determined that the accessed information may have contained PII and PHI relating to PHS patients. *Id.* As a result, and after forensic review, "in an abundance of caution" and despite "no indication of identity theft or fraud," Thompson Coburn mailed written letters in early November 2024 to provide notice of the Incident to potentially affected PHS patients, and the letter included an offer for complimentary credit monitoring and identity theft protection services. *See id.* ¶ 42 n. 8; *see also* Exhibits "A" through "C."

Plaintiffs filed a barrage of lawsuits shortly after they received notice of the Incident. In their Consolidated Complaint, Plaintiffs assert multiple theories of relief against Thompson Coburn and PHS, based on the claim that they face "significant risk of medical-related identity theft and fraud as a result of the Incident." *Id.* ¶¶ 8, 127. Plaintiffs allege they experienced the following litany of generic unspecified harms and damages as a result of the Incident:

(i) invasion of privacy; (ii) theft of their Private Information; (iii) unconsented disclosure of their Private Information; (iv) lost money, time, and opportunity costs associated with attempting to mitigate the effects of the Data Breach; (v) loss of benefit of the bargain; (vi) loss of the value of the unauthorized access to their Private Information permitted by Defendants; (vii) the value of ongoing identity monitoring and protection services necessitated by the Data Breach; (viii) statutory damages; (ix) nominal damages; and (x) the continued and increased risk to their Private Information, which remains unencrypted and accessible to unauthorized third parties and is still backed up in Defendants' possession, subject to further unauthorized disclosures unless Defendants implement appropriate and adequate protective measures.

*Id.* ¶ 127. The Complaint also includes a handful of sentences where a few Plaintiffs attempt to allege more "explicit" harms, such as increased spam communications, notifications that unspecified Private Information is on the "dark web," and an attempted, but unsuccessful, purchase of an Apple computer. *See* Compl. ¶¶ 165, 176-77, 189, 213-14, 248, 261, 273.

Notably, the Complaint contains no allegations of "identity theft," quantifiable unreimbursed monetary harm, or any actual misuse of any of Plaintiffs' Private Information, much less that such actual misuse resulted from the Incident. Instead, the Complaint relies on generalized averments of speculative possible future harms, emotional distress, and unrelated "injury," in an attempt to try to allege facts that establish causation and legally cognizable damages—all of which are insufficient to sustain any actionable claim for relief.

## III.    ARGUMENT

A motion to dismiss under Fed. Civ. Pro. R. 12(b)(6) tests the legal sufficiency of the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007); *Sahm v. Avco Corporation*, No. 4:23- CV-00200-AGF, 2023 WL 4350950, at *2 (E.D. Mo. July 5, 2023). Determining whether the complaint states a plausible claim for relief "is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Willis v. Buckner*, No. 4:09CV1108 CDP, 2009 WL 2382771, *1 (E.D. Mo. July 31, 2009) (quoting

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). To avoid dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Sahm*, 2023 WL 4350950 at *2. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. Moreover, "[w]hen faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred." *Roberts v. Hays*, No. 4:18-CV-445-DDN, 2018 WL 3861342, at *2 (E.D. Mo. Aug. 14, 2018) (citing *Iqbal*, 556 U.S. at 680-82).

## A. Plaintiffs' Failure to Plead Facts That Could Possibly Establish Legally Cognizable Damages or Causation Requires Dismissal of the Negligence Cause of Action (Count I), as well as All Other Counts of the Complaint.

As the Eighth Circuit has made clear, "it is the facts alleged in a complaint, and not the legal theories, that state a claim." *Topchian v. JPMorgan Chase Bank, N.A.,* 760 F.3d 843, 849 (8th Cir. 2014). Regardless of the legal theories asserted, each of the ten Plaintiffs must allege *facts* that, assumed as true, support the conclusion that the defendant's conduct and the Incident at issue proximately caused that Plaintiff to suffer legally cognizable injury as damages. None of the Plaintiffs have alleged facts (as opposed to conclusions) that support proximate causation or legally cognizable injury sufficient to state an actionable claim for relief. Various courts across the country have dismissed similar vague data breach claims for these same reasons.

### 1. None of the "Harms" Alleged by Plaintiffs Constitute Cognizable Damages.

"Massive class action litigation should be based on more than allegations of worry and inconvenience." *Kuhns v. Scottrade, Inc.* 868 F.3d 711, 718 (8th Cir. 2017). Here, the Complaint does not contain any plausible factual allegations that Plaintiffs have actually suffered any identity

theft, financial harm, or that they have incurred any *specific* out-of-pocket cost associated with the Incident. Instead, Plaintiffs primarily allege damages in the form of conclusory claims of theoretical future "risk," "lost time," purported diminution in value of their information, and time and money purportedly spent on unspecified mitigation efforts. These claims are insufficient to establish the majority of their causes of action, where damages are a required element. Indeed, the Eighth Circuit and other courts around the country have found all of these "harms" to be insufficient to establish cognizable damages in the data breach context. *See e.g., SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) ("time spent protecting [oneself] against the threat of future identity theft does not amount to an out-of-pocket loss."); *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1236 (D. Nev. 2020), a*ff'd*, 845 F. App'x at 614 (finding that allegations of "lost time" did not constitute cognizable damages and that in order for a "diminution in value" allegation to be sufficient Plaintiffs must establish a market for such data and an inability to participate in that market); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021) ("general allegations that a plaintiff's personal information has diminished in value are not enough.").

Plaintiffs' allegations of emotional distress are also insufficient to establish the damages element of a negligence claim, or any of Plaintiffs' claims. *See Baldwin v. National Western Life Ins. Co.*, 2021 WL 4206736 at *4 (W.D. Mo. Sept. 15, 2021) (holding emotional distress allegations in data breach cause of action without some physical manifestation of said allegations are not enough to sustain an action against defendants). "Where the plaintiff is a direct victim of defendant's negligence and seeks damages for emotional distress, the plaintiff is required to prove two additional elements: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be

medically diagnosable and must be of sufficient severity so as to be medically significant." *Biersmith v. Curry Ass'n Mgmt., Inc.*, 359 S.W.3d 84, 88 (Mo. Ct. App. 2011) (internal citation omitted); *Couzens v. Donohue*, 854 F.3d 508, 518 (8th Cir. 2017) (*citing Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001)); *Baldwin*, 2021 WL 4206736, at *4. Here, Plaintiffs' generic allegations of "fear, anxiety, and stress" are insufficient to establish damages given the lack of any allegations establishing medical diagnosis or significance. *Id.* ¶ 122.

Plaintiffs' more specific claimed injuries fare no better. Spam communications are a fact of life for everyone, and, although inconvenient and annoying, an alleged increase in spam communications (even if Plaintiffs could connect them to the Incident) does not rise to the level of damage sufficient to support an actionable claim. *See Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *5 (S.D.N.Y., 2022) ("Courts have generally rejected the theory that unsolicited calls or emails constitute an injury in fact."); *Barbara Reynolds Burger, et. al v. Healthcare Mgmt. Solutions, LLC et. al,* 2024 WL 473735, at *6 (D. Md. Feb. 7, 2024) (dismissing the "generic allegation of increased spam calls and emails" as the plaintiff failed to allege that her email address was compromised in the breach, and that such claims "confuse[] correlation with causation."); *McCombs v. Delta Grp. Elecs., Inc*., 2023 WL 3934666, at *6 (D.N.M. June 9, 2023) ("Spam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications."); *Liau v. Weee! Inc*., 2024 WL 729259, at *6 (S.D.N.Y. Feb. 22, 2024) ("[C]ourts have generally rejected the theory that unsolicited calls or emails constitute an injury in fact.") (citation omitted).

Similarly, allegations that Plaintiffs Tafoya and Cochrane received notifications that their information was on the dark web do not suffice as cognizable damages. These allegations, standing alone without any additional allegations about exactly when the notifications were received, what

information was allegedly available on the dark web, or what was allegedly being done with that information simply do not demonstrate injury. *See generally, Owen-Brooks v. DISH Network Corp.*, No. 1:23-CV-01168-RMR-SBP, 2024 WL 4338133, at *10 (D. Colo. Aug. 23, 2024) (in discussing traceability, "[Plaintiff] alleges that she has received notifications . . . stating that her personal information is present for sale on the dark web . . .but without any allegation as to when she received the notifications and what types of her personal information are for sale, her claim fails for lack of traceability to the Data Breach."); *Williams v. Bienville Orthopaedic Specialists*, *LLC,* 737 F. Supp. 3d 411, 424 (S.D. Miss. 2024), *appeal dismissed sub nom. Williams v. Bienville Orthopaedic Specialists, L.L.C.*, No. 24-60365, 2024 WL 5330715 (5th Cir. Sept. 6, 2024) (holding notification of information on the dark web without additional information linking that notification to the data security incident was insufficient to establish traceability).

Finally, Plaintiff Ortiz's conclusory allegations that someone "attempted" to purchase a laptop using her Amazon account cannot constitute cognizable harm here because she does not allege her payment card information was compromised in the Incident or that she experienced a corresponding monetary consequence. Compl. ¶ 214. Courts around the country have held similar allegations are not sufficient to establish injury or damage. *See Whalen v. Michael Stores, Inc.*, 153 F.Supp.3d 577, 581, 583 (E.D.N.Y. 2015) (holding that there was no actual injury or monetary loss where the plaintiff experienced an attempted fraudulent charge on his credit card which was ultimately not approved), *appeal filed*, No. 16–352 (2d Cir. Feb. 5, 2016); *Burton v. MAPCO Express, Inc.*, 47 F. Supp. 3d 1279, 1281, 1285 (N.D. Ala. 2014) (holding that there was no actual injury or monetary loss where the plaintiff experienced several fraudulent charges on his credit card which were later reimbursed); *In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *6 (N.D. Ill. Sept. 3, 2013) (holding that there was no actual injury or monetary loss where the

plaintiff experienced a fraudulent charge on her credit card which was later reimbursed); *Green v. eBay Inc.*, 2015 WL 2066531, at *4 (E.D. La. May 4, 2015).[2]

### 2. The Complaint Does Not Plausibly Allege Causation Essential for the Negligence Claim to Survive.

The *Kuhns* and *SuperValu* Eighth Circuit decisions each affirmed the dismissal of data breach claims alleging generalized injury, on the grounds that the plaintiff failed to state facts to support various elements of an actionable claim for relief, including causation and legally cognizable damages. *Kuhns v. Scottrade, Inc.* 868 F.3d 711 (8th Cir. 2017); *In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019). In addition, the *Masterson v. IMA Financial Group, Inc.* 2023 WL 8647157 at *4 (D. Kan. Dec. 14, 2023) opinion explains the need to allege specific facts that support "traceability," or proximate causation – that the defendant's negligence and the Incident actually caused a legally cognizable injury – in order for the causation element of a claim to be established.

In summary, Plaintiffs do not plausibly allege any facts that could support a conclusion that their claimed damages were proximately caused by the Incident. The gravamen of Plaintiffs' negligence claim is that Thompson Coburn was negligent by "fail[ing] to exercise reasonable care in safeguarding such Private Information" which, in turn, caused "Plaintiffs" to suffer a litany of generic "damages and injuries." *See* Compl. ¶¶ 294-97. As addressed below, a few Plaintiffs add more specific allegations of harm, but critically, none of those specific allegations connect the Incident to the disclosure of Plaintiffs' Private Information – much less with any harm resulting from disclosure of Plaintiffs' Private Information.

---

[2] Thompson Coburn respectfully submits that the Western District of Missouri in 2021 inaccurately applied Missouri precedent when it found that similar allegations to those pled by Plaintiffs here were sufficient to establish the damages element of a negligence cause of action. *See Baldwin v. Nat'l W. Life Ins. Co.,* No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *5 (W.D. Mo. Sept. 15, 2021).

Indeed, many facts Plaintiffs allege undercut causation. Plaintiffs allege that healthcare related data breaches have "proliferated extensively." Compl. ¶ 69. According to Plaintiffs, "[i]n the third quarter of the 2023 fiscal year alone, 733 organizations experienced data breaches, resulting in 66,658,764 individuals' personal information being compromised." *Id.* ¶ 70; *see also id.* ¶ 71 (listing multiple "recent high profile cybersecurity incidents at other healthcare partner and provider companies" involving "potentially hundreds of millions of patients"). Plaintiffs also allege that PHS experienced a prior data breach in 2019, which, they say, "exposed" the "private information of approximately 183,370 patients." *Id.* ¶¶ 49-53. Given these allegations about other incidents and the absence of any detailed supporting allegations about the Incident at issue, it is simply not plausible to infer that any of the non-specific alleged harms purportedly experienced by Plaintiffs were caused by Thompson Coburn's alleged negligence or the Incident at issue.

The facts that are and are not alleged in the Complaint are important. For each of the ten Plaintiffs, the Complaint makes the identical allegation: "[a]ccording to the Notice Letter, Plaintiff [name]'s Private Information was improperly accessed and obtained by unauthorized third parties." The Complaint includes a generalized allegation that the "types of Private Information" disclosed in the Incident include twelve different types of information. Compl. ¶ 44. None of the Plaintiffs, however, allege what of their own "Private Information" was disclosed, even though the notification letters sent to each Plaintiff (a) listed the specific data elements that were exposed for each recipient, and (b) told the Plaintiffs "[t]he unauthorized access to your information did **NOT** involve your Social Security number or financial or credit card account information." *See* Exhibits "A" through "C"[3](emphasis in original).

---

[3] The notice letters for Plaintiffs Duran, Cochrane, and Wuorinen, although not annexed to the Complaint, are expressly referenced in the Complaint. *See* Compl. ¶¶ 186, 245, 270. In addition, Plaintiffs Salazar, Mathiasen, and Madrid annex their notice letters to their original Complaints as Exhibits. *See* ECF No. 1-1; *Mathiason v. Thompson Coburn, LLP,* No. 24-cv-01522 at Exhibit "A" (ECF No. 1-1); *Madrid v. Thompson Coburn, LLP,* No. 24-cv-01542

The six Plaintiffs who allege an increase in spam calls, emails, and texts[4] do not allege that their phone number or email address was disclosed in the Incident or that Thompson Coburn had such information. Compl. ¶¶ 165, 176, 189, 213, 261, 273; *see also* Exhibits "A" through "C." Plaintiff Cochrane avers that she received an "alert" that her information was on the "dark web," without any other facts. None of these allegations support a claim that the Incident proximately caused cognizable injury.

Plaintiff Ortiz alleges that she "was notified that cybercriminals attempted to purchase an Apple "Mac" laptop on her Amazon.com account." Compl. ¶ 214. Ortiz does not allege that any such purchase occurred, only that it was supposedly "attempted." *Id.* While Plaintiff Ortiz avers that the purchase was purportedly attempted on the same payment card that she used with PHS at some unidentified point in time, she notably does not allege that her payment card information was disclosed in the Incident at issue. *Id.* ¶ 214.

In *SuperValu*, the Eighth Circuit's affirmance of the district court's Rule 12(b)(6) dismissal rejected a similar artful attempt to plead causation. There, the plaintiff plead that the incident resulted in a fraudulent credit card charge, but did not allege he paid the charge and rather, argued the court should infer that he paid the charge. 925 F.3d at 964. The Eighth Circuit noted the "conspicuous absence" of any allegation of causation of harm and that it would not make an unreasonable inference that such harm occurred. *Id.* Similarly here, despite being notified in their

---

at Exhibit "A" (ECF No. 1-1). With respect to the notice letters Thompson Coburn annexed as exhibits here, the Court may consider them on a motion to dismiss. On a motion to dismiss, Courts can consider "the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir. 2012) (internal quotations omitted).

[4] Plaintiffs' Salazar, Tafoya, Duran, Ortiz, Martinez and Wuorinen allege an increase in spam communications. Compl. ¶¶ 165, 176, 189, 213, 261, 273.

notice letters as to what data elements were accessed in the Incident, Plaintiffs' Complaint does not allege what specific "Private Information" they provided to PHS, or how disclosure of that specific personal information has caused them any legally cognizable harm.

In short, Plaintiffs' Consolidated Complaint does not allege any facts that support a reasonable inference that the Incident caused any of Plaintiffs' claimed injuries. As a result, Plaintiffs have not alleged an actionable claim for relief.

**B. Plaintiffs' Negligence *Per Se* Claim Fails Because There is No Private Right of Action under HIPAA or the FTC Act (Count II)**

Plaintiffs' claim for negligence *per se* suffers from the same deficiencies stated in the previous section and should be dismissed for those reasons. In addition, the Eighth Circuit has previously held that the statutes Plaintiffs base the Count II claim upon—Section 5 of the Federal Trade Commission Act (the "FTC Act") and the Health Insurance Portability and Protection Act ("HIPAA")—do not provide a private right of action and therefore cannot support a negligence *per se* claim.  *Supervalu,* 925 F.3d at 963 (holding there can be no statutory duty for a negligence claim under the FTC Act because there is no private right of action); *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015)(holding there is no private cause of action under FTC Act); *Koehler v. New American Funding,* 2024 WL 3338782, at *7  (E.D. Mo. Jul. 9, 2024) (dismissing cause of action premised on FTC Act brought by private citizen because FTC Act does not have private right of action); *Dodd v. Jones,* 623 F.3d 563 (8th Cir. 2010)(dismissing plaintiffs' cause of action claiming HIPAA violations because there is no private right of action under HIPAA); *Newton v. Compass Health Network,* 2022 WL 11545522, at *3 fn. 5 (E.D. Mo. Apr. 19, 2022) ("HIPAA does not create a private right of action").

This Court should follow these decisions and dismiss Plaintiffs' Count II negligence *per se* claim.

**C. Plaintiffs Have Not Established the Existence of a Contract Created for the Benefit of the Plaintiffs, Requiring Dismissal of the Third-Party Beneficiary Claim (Count V)**

Under Missouri law, a third-party bringing an action to enforce a contract can only do so if the contract terms expressly demonstrate intent to benefit the third party or an identifiable class of individuals of which the third party is a member. *See State ex rel. William Ranni Assoc., Inc. v. Hartenbach*, 742 S.W.2d 134, 140-41 (Mo. banc 1987). A plaintiff cannot state an actionable claim for relief as a third-party beneficiary of a contract if they are only an incidental beneficiary to a contract, and they benefit only collaterally from the contract. *Id.* at 140; *Zygler v. Hawkins Constr.*, 609 S.W.3d 61, 69 (Mo. Ct. App. 2020). Indeed, "[i]n cases where the contract lacks an express declaration of that intent [to benefit a third-party], there is a *strong presumption* that the third party is    not    a beneficiary and    that    the    parties contracted to    benefit    only themselves." *Nitro Distributing, Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006) (emphasis added). "Furthermore, a mere incidental benefit to the third party is insufficient to bind that party." *Id.*; *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. 2007) ("Not every person who is benefitted by a contract may bring suit to enforce the contract.").

Count V alleges that Thompson Coburn breached its contract with PHS for the provision of legal services. Plaintiffs do not identify this alleged contract or any express provision in this alleged contract stating it benefits plaintiffs (or any other third parties). There are also no factual allegations in the Complaint demonstrating an intent by Thompson Coburn or PHS that this unidentified contract for legal services benefit Plaintiffs, who are patients of PHS and are not in privity with Thompson Coburn. Simply put, it is not plausible that such a contract between attorney and client was intended to benefit plaintiffs. Indeed, such conjecture is highly *illogical* as law firms are disinclined to provide rights to third parties, like Plaintiffs, for a number of obvious reasons (e.g., protection of confidentiality and attorney-client privilege).

13

Plaintiffs' third-party contract claim is also deficient because they do not sufficiently plead the elements of a breach of contract claim. Plaintiffs conclude that Thompson Coburn breached the presumed contract but fail to allege facts plausibly explaining how the Incident, which was perpetrated by a third-party cyber-criminal, constitutes a breach of this presumed legal services contract. Such factual allegations are necessary to state an actionable claim for relief even if Plaintiffs could establish the existence of a contract between Thompson Coburn and PHS, and that they are third-party beneficiaries of the contract. *See Krefting v. Kaye-Smith Enterprises Inc.,* No. 2:23-CV-220, 2023 WL 4846850, at *8 (W.D. Wash. July 28, 2023) ("Plaintiff has not sufficiently alleged that BECU breached its contract with Kaye-Smith, which is fatal to his third-party claim against BECU").

Courts routinely dismiss third-party contract claims in the data breach context for exactly these reasons. *See, e.g.*, *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 600 (S.D.N.Y. 2022) (dismissing breach of third party beneficiary contract claims in data breach class action, alleging damages resulting from contract between company and customers, who were not plaintiffs, to provide proxy services); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 765 (C.D. Ill. 2020) (dismissing breach of third-party beneficiary contracts cause of action because plaintiffs did not "allege enough facts that identify a certain contract or provision."); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1265 (S.D. Fla. 2024) (dismissing breach of third party beneficiary contract cause of action because did not allege "facts showing that [the parties to the contract] clearly and specifically expressed their intent for the contract to benefit [the Plaintiffs] or any other third parties.").  This Court should follow suit and dismiss Count V.

### D.  Plaintiffs Have Failed to Plead a Claim for Unjust Enrichment (Count VI)

Plaintiffs do not and cannot plausibly allege that they conferred a benefit on Thompson Coburn, which is a required element of an unjust enrichment claim under Missouri law. *Topchian*

*v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014) ("A claim for unjust enrichment has three elements: a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of the benefit; and the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable.")(quoting *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo. Ct. App. 2006)). Although Count VI states the conclusion that Plaintiffs "conferred a monetary benefit" on Thompson Coburn (Compl. ¶ 346), no factual allegations in the Complaint support that conclusion. There is no relationship between Plaintiffs and Thompson Coburn. As Plaintiffs admit, Thompson Coburn received Plaintiffs' information "indirectly" from PHS in the context of providing legal services to PHS. Compl. ¶ 346. Plaintiffs' information did not benefit Thompson Coburn in any way and Thompson Coburn did not receive *any* payment from Plaintiffs for data protection services or otherwise. Accordingly, Plaintiffs' third-party beneficiary unjust enrichment claim is not plausible and should be dismissed. *See e.g., Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) (dismissing unjust enrichment claim in data breach class action for failure to allege a benefit conferred in exchange for protection of PII and the failure to demonstrate how retention of any benefit was inequitable); *Linman v. Marten Transp., Ltd.*, No. 22-CV-204-JDP, 2023 WL 2562712, at *6 (W.D. Wis., Mar. 17, 2023) (holding the plaintiff did not state an unjust enrichment claim because he "identifie[d] no benefit that his personal information provided [the defendant].").[5]

---

[5] Courts routinely dismiss unjust enrichment claims in the data breach context where, like here, plaintiffs fail to plausibly allege they paid the defendant money for data security services. *See, e.g., Jurgens v. Build.com, Inc.*, No. 4:17-CV-00783-AGF, 2017 WL 5277679, at *7 (E.D. Mo. Nov. 13, 2017) (dismissing unjust enrichment claim where the plaintiff "d[id] not allege any facts giving rise to a reasonable inference that any specific portion of the money she paid was intended or required to be spent on data protection" and, consequently failed to plausibly allege that she conferred a benefit on Defendant the retention of which would be inequitable); *Stephens v. Availity LLC*, 2019 WL 13041330, at *6 (M.D. Fla., Oct. 1, 2019)(dismissing unjust enrichment claim where "[t]here [wa]s no allegation [the plaintiff] paid her healthcare insurer, healthcare providers, or [the defendant] for data security services, so no benefit was conferred.") (citing *SuperValu*, 2018 WL 1189327, at *16–17); *Webb v. Injured Workers Pharmacy, LLC*, 2023 WL 5938606 (D. Mass. Sept. 12, 2023) (dismissing unjust enrichment claim arising from data breach where plaintiffs did not allege that they paid defendant anything for storage of their PII); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 688 (D.S.C. 2021)(dismissing unjust enrichment where plaintiff did not pay defendant

Further, if the Court does not dismiss the Count V third party beneficiary claim, the Court must dismiss Plaintiffs' Count VI equitable unjust enrichment claim. *Kuhns*, 868 F.3d at 718 ("Plaintiff cannot recover under an equitable theory such as unjust enrichment when an express agreement covers the same subject matter."). Plaintiffs conclude that the unidentified legal services contract between Thompson Coburn and PHS "included data security practices, procedures, and protocols sufficient to safeguard" Plaintiffs' information and was "made expressly for the benefit of Plaintiffs and Class Members." Compl. ¶¶ 339, 340. That conclusion is not plausible, but to the extent the Court determines it is and allows Plaintiffs' Count V third-party contract claim to proceed, the terms of the alleged legal services contract at issue would govern the parties' rights and obligations regarding protection of Plaintiffs' information. In that circumstance, Plaintiffs' claim for unjust enrichment cannot proceed. *See Kuhns*, 868 F.3d at 718; *Howard v. Turnball*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010).

### E. There is No Fiduciary Relationship Between Thompson Coburn and Plaintiffs Making the Breach of Fiduciary Duty of Confidentiality Claim Invalid (Count VII).

Plaintiffs allege that Thompson Coburn owed a fiduciary duty to Plaintiffs "pursuant to Missouri common law" to keep their personal information confidential and subsequently breached that duty as a result of the Incident. Compl. ¶ 357. Not so. Plaintiffs do not allege (nor would it be factually accurate to allege) that Plaintiffs had an attorney-client relationship with Thompson Coburn or any other type of relationship that is recognized as fiduciary under Missouri law. The allegations in the Complaint also do not plausibly establish the existence of a fiduciary relationship under Missouri common law between Thompson Coburn and Plaintiffs.

---

*anything* and did not even "directly provide their information" to defendant, but instead Plaintiffs' information was provided to defendant by a third party).

The existence of a fiduciary duty is a question of law. *Mackey*, 2021 WL 3363174, at *10. In order for a fiduciary relationship to exist under "Missouri common law," the following five elements must *all* be met:

> (1)[O]ne party must be subservient to the dominant mind and will of the other party as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value, which are the property of the subservient party, must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic and habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.

*Id.*, 2021 WL 3363174, at *11 (quoting *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998)).

None of these five factors are present in this case. *First*, Plaintiffs have no relationship with Thompson Coburn and therefore are in no way subservient to Thompson Coburn as a result of their physical, mental, age or health condition. *Second*, there are no land, monies, or businesses at issue here that is managed by Thompson Coburn for the Plaintiffs—again, Thompson Coburn and the Plaintiffs had no relationship at all. *Third,* there is no surrender of independence by Plaintiffs to Thompson Coburn. *Fourth*, there is no automatic and habitual manipulation of Plaintiffs by Thompson Coburn as, again, there is no relationship between the parties. *Fifth*, there is no factual showing of any trust and confidence placed by Plaintiffs in Thompson Coburn. Prior to the Incident, Plaintiffs did not even know that PHS had provided their information to Thompson Coburn. Because each of the five elements is not present, there is no fiduciary relationship between Thompson Coburn and Plaintiffs as a matter of law.

Courts routinely dismiss breach of fiduciary duty claims in the data breach context for lack of a fiduciary relationship. For example, in *Mackey,* Judge Ross applied the above-referenced factors and dismissed a breach of fiduciary duty claim, holding that no fiduciary duty existed

between an employer and employee following a data breach. *Mackey*, 2021 WL 3363174, at *11 (dismissing fiduciary duty claim because the plaintiff did not plausibly allege "that a fiduciary duty existed based on the five elements outlined by the court in *Drew*"). Other courts within the Eighth Circuit have similarly dismissed fiduciary duty claims in data breach class action cases, highlighting the lack of a fiduciary relationship. *See, e.g., Harris v. Mercy Health Network, Inc.*, No. 4:23-CV-00195-SHL-SBJ, 2024 WL 5055556, at *13 (S.D. Iowa June 26, 2024) (no fiduciary relationship between plaintiff and health system because providing personal information to health system was "corollary part of his relationship with [defendant]"); *Rodriguez v. Mena Hospital Commission,* 2023 WL 7198441, *10 (W.D. Ark., Nov. 1, 2023)(dismissing breach of fiduciary duty against health system in data breach class action matter due to no fiduciary relationship).

Based on the foregoing, Plaintiffs' breach of fiduciary duty of confidentiality claim must be dismissed.

## F. Plaintiffs' Cannot Avail Themselves of the Missouri Merchandising Practices Act ("MMPA"), and the Claim Fails as a Matter of Law (Count VIII)

Plaintiffs allege that Thompson Coburn violated the MMPA by representing it would not disclose Plaintiffs' information, failing to implement adequate security measures, and failing to train personnel. Compl. ¶¶ 364, 368. Plaintiffs' Count VIII MMPA claim fails to state an actionable claim for relief for multiple reasons.

*First*, Plaintiffs are not residents of Missouri, but rather, are all residents of New Mexico and they have alleged no transactional conduct between themselves and Thompson Coburn unrelated to the Incident that occurred in Missouri. *See Perras v. H&R Block,* 789 F.3d 914 (8th Cir. 2015) (affirming denial of class certification on MMPA claims for non-Missouri residents for "transactions that took place outside of Missouri between representatives of H & R located outside

of Missouri and consumers who reside outside of Missouri."); *Hall v. Emerson Electric Company,* 942 F.3d 401, 403-404 (8th Cir. 2019) (same).

*Second,* Plaintiffs do not and cannot allege that they purchased or leased any goods or services from Thompson Coburn. The MMPA only provides a private right of action "to any person who sustains ascertainable loss in connection with the purchase or lease of merchandise as a result of certain practices declared unlawful." *Kuhns*, 868 F.3d at 719 (8th Cir. 2017) (citing RSMo. § 407.025(1)); *K.A. by & Through B.W. v. Children's Mercy Hosp.*, No. 4:18-00514-CV-RK, 2019 WL 2144815, at *4 (W.D. Mo. May 16, 2019).  As Judge Ross found in dismissing a similar MMPA claim in another data breach case:  "One . . . who never . . . pays anything of value cannot be said to have suffered damage [under the MMPA] by reason of any unlawful practice." *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1057 (E.D. Mo. 2009).

*Third*, Plaintiffs have not alleged *any* "ascertainable loss"—i.e., recognizable monetary or property harm—as required to maintain an MMPA claim. *See supra* Section III(A); RSMo. § 407.025(1); *Amburgy*, 671 F. Supp. 2d at 1057–58 (dismissing MMPA claim in data breach context because plaintiff "fails to plead that plaintiff paid anything of value for the purchase or lease of merchandise".); *Ziglin v. Players MH L.P.*, 36 S.W.3d 786, 790 (Mo. Ct. App. 2001) ("The language of [the MMPA] is plain and unambiguous.  'A private cause of action is given only to one who purchases and suffers damages.'") (quoting *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo. Ct. App. 1984)).  Plaintiffs' various generic allegations regarding "injury" are insufficient to plausibly establish "ascertainable loss." *See supra* Section III(A).

MMPA claims are often dismissed in the data breach context for exactly these reasons. For example, in *Kuhns,* the Eighth Circuit affirmed dismissal of an MMPA claim against a securities brokerage firm following a data breach. *See* 868 F.3d at 719 (affirming dismissal of MMPA claim

for "several reasons" including that the plaintiffs failed to allege an unlawful act that occurred "in relation to a sale of merchandise, and an ascertainable pecuniary loss . . . in relation to the plaintiff's purchase or lease of that merchandise."); *see also Amburgy*, 671 F. Supp. 2d at 1057-58 (dismissing MMPA claim in data breach case because the "Plaintiff does not allege . . . that his loss was in relation to his purchase or lease of any merchandise" and the plaintiff failed to "please an ascertainable loss of money or property which is recoverable under the MMPA."). Likewise, in *Fortra*, the Southern District of Florida, applying Missouri law, recently dismissed MMPA claims against a supplemental health benefits administrator, with prejudice, because "defendant sold healthcare services and not data security services." *In re Fortra File Transfer Software Data Security Breach Litigation,* 749 F.Supp.3d 1240, 1276 (S.D. Fla 2024)(citing *In Re Mednax Services, Inc., Customer Data Security Breach,* 603 F.Supp.3d 1183, 1215 (S.D. Fla. 2022)(applying Missouri law and dismissing MMPA claim in data breach class action because "Mednax sold healthcare services and not data security services"). This Court should follow these decisions and dismiss Count VIII.

**G.  Plaintiffs' Claim for Declaratory Judgment Should be Dismissed as Duplicative of Plaintiffs' Other Claims (Count IX).**

Plaintiffs' Count IX declaratory judgment claim seeking a declaration that Defendants' security measures fail to comply with "obligations and duties of care" (Compl. ¶ 381) is improper. The Count IX declaratory judgment claim is not its own separate claim for relief; rather, it is a repackaging of Plaintiffs other claims under a new name. *See Fam. Dollar Stores of Missouri, LLC v. Tsai's Inv., Inc*., No. 4:21-CV-572-SRW, 2022 WL 355109, at *8 (E.D. Mo. Feb. 7, 2022) (declaratory judgement is a remedy, not a separate cause of action); *see also Amerisure Mut. Ins. Co. v. Maschmeyer Landscapers, Inc.*, No. 4:06-CV-1308 (CEJ), 2007 WL 2811089, at * (E.D. Mo. Sept. 24, 2007) (citation omitted) ("A petition seeking declaratory judgment that alleges

20

breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract."); *Mackey* 2021 WL 3363174, at *12  (Dismissing declaratory judgment cause of action in data breach class action as duplicative of plaintiffs' negligence and breach of implied contract causes of action); *Morningstar, LLC v. Hardee's Food Sys., Inc.*, No. 4:08CV794, 2009 WL 36406, at *4 (E.D. Mo. Jan. 6, 2009) (dismissing declaratory judgment claim that was duplicative of other counts because it would serve no useful purpose).[6]

For the foregoing reasons, Plaintiffs' declaratory judgment cause of action must be dismissed.

---

[6] Indeed, Plaintiffs request for injunctive relief for "forward-looking relief" is not appropriate in a data breach class action. *See e.g., Hall v. Centerspace, Inc.* 2023 WL 3435100 (D. Minn., May 12, 2023).

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Thompson Coburn's motion and dismiss Plaintiffs' Consolidated Complaint with prejudice because Plaintiffs have failed to state any cognizable claims.

Dated:  March 24, 2025
        St. Louis, Missouri

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

/s/ *Jason Winslow*
Jason Winslow (MO Bar No. #60710)
211 North Broadway
Suite 2150
St. Louis MO 63102
(314) 797-7703
jwinslow@grsm.com

Justin M. Holmes (*pro hac vice* forthcoming)
Three Logan Square, 1717 Arch Street,
Suite 610,
Philadelphia, PA 19103
Tel: 212.453.0787
jholmes@grsm.com

Brian E. Middlebrook (*pro hac vice* forthcoming)
Alexandra Mormile (*pro hac vice* forthcoming)
One Battery Park Plaza,
28th Floor
New York, NY 10004
Tel: 212.269.5500
bmiddlebrook@grsm.com
amormile@grsm.com

*Counsel for Defendant Thompson Coburn LLP*

22

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 24th day of March, 2025, a copy of the foregoing filing was electronically transmitted to all registered participants as identified on the Notice of Electronic Filing through CM/ECF system for filing.

DATED:  March 24, 2025                    _/S/ Jason Winslow_____
                                                            JASON WINSLOW